Matthew J. DAVIDSON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–6147.

Court of Appeals of Alaska.

March 19, 1999.

William E. Olmstead, Olmstead & Conheady, Juneau, for Appellant.

James L. Hanley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

1. AS 11.41.200(a)(1).

2. AS 11.41.200(a)(1).

3. *See Napayonak v. State*, 793 P.2d 1059, 1061 (Alaska App.1990); *Walker v. State*, 742 P.2d 790 (Alaska App.1987).

Before COATS, Chief Judge,
MANNHEIMER and STEWART, Judges.

*OPINION*

COATS, Chief Judge.

Matthew J. Davidson was convicted by a jury of assault in the first degree, a class A felony.[1] Davidson appeals to this court, raising essentially two issues: (1) that the state presented insufficient evidence at trial to support a conviction for assault in the first degree; and (2) Superior Court Judge Larry C. Zervos erred in rejecting Davidson's motion for a new trial. We affirm.

*SUFFICIENCY OF THE EVIDENCE*

Davidson was convicted of assault in the first degree for assaulting Gordon Hall. Assault in the first degree occurs when the defendant "recklessly causes serious physical injury to another by means of a dangerous instrument."[2] Davidson challenges the sufficiency of the evidence by claiming the state presented insufficient evidence to prove: (1) that Hall sustained "serious physical injury"; (2) that Davidson caused the serious physical injury to Hall; and (3) that Davidson used a "dangerous instrument."

In determining whether there is sufficient evidence to support a conviction, we are to consider the evidence in the light most favorable to the prevailing party, in this instance, the state.[3] We are to determine whether the evidence is adequate to support a conclusion by a reasonable mind that the defendant is guilty of the offense beyond a reasonable doubt.[4]

According to the evidence presented at trial, Davidson and his friend, Jeff Anderson, confronted Hall in Sitka, Alaska. According to Hall's testimony, following an argument, Davidson began striking him with his fists. Hall tried to run away but Anderson caught

4. *See O'Dell v. Municipality of Anchorage*, 573 P.2d 1381, 1383 (Alaska 1978); *Sheldon v. State*, 796 P.2d 831, 839 (Alaska App.1990).

up to him and knocked him to the ground. Then, Davidson and Anderson kicked Hall, mostly in the head. Hall eventually passed out. Robert Gorman testified that he and a friend came upon the scene and saw the two men kicking Hall. Gorman testified that he saw him (Davidson) kick Hall in the upper body and head. Gorman stated Davidson used full kicks in striking Hall, and that he saw Davidson kick Hall approximately eight times. Gorman stated that Hall was unconscious by the time he and his friend reached him. Gorman summoned an ambulance for Hall and Hall was taken to the hospital.

According to Hall, he was unable to return to work for more than a week after the beating. He sustained a concussion, a broken nose, and several other abrasions/cuts from the assault. At trial, which was held six months after the beating, Hall stated that he still suffered from headaches. He had scars below his right eye and forehead.

■ Davidson's first contention is that the evidence presented at trial was insufficient to establish that Hall sustained serious physical injury. Serious physical injury is defined by Alaska Statute 11.81.900(b)(53) as:

> (A) physical injury caused by an act performed under circumstances that create a substantial risk of death; or
>
> (B) physical injury that causes serious and protracted disfigurement, protracted impair-ment of health, protracted loss or impairment of the function of a body member or organ, or that unlawfully terminates a pregnancy.

The evidence presented at trial, taken in the light most favorable to the state, established that Davidson kicked Hall several times in the head while Hall was lying helplessly on the ground. Gorman demonstrated the nature of the kicks for the jury which he described as "a full kick." He indicated that it was difficult to demonstrate the kick without kicking something because otherwise he could fall down doing the demonstration. Hall described the extent of his injuries which supported the conclusion that he had been struck severely in the head and sustained a concussion.

Based upon this evidence, a reasonable jury could have concluded that Davidson kicked a helpless and unconscious Hall several times in the head. There was sufficient evidence for the jury to find that Hall's injury was "caused by an act performed under circumstances that create a substantial risk of death." [5] We accordingly conclude there was sufficient evidence for the jury to find that Hall suffered serious physical injury.

■ Next, Davidson contends that the evidence presented at trial was insufficient to establish that Davidson caused Hall's injuries. He points out that Hall was unable to tell whether Anderson or Davidson was the person who kicked him in the head. Gordon's testimony, however, taken in the light most favorable to the state, establishes that Davidson was the person kicking Hall's head as Hall lay helplessly on the ground. This evidence was sufficient to support a conclusion by a reasonable jury that Davidson caused serious physical injury.

■ Davidson also argues that there was insufficient evidence to support his conviction for assault in the first degree because the state did not establish that he caused the injury "by means of a dangerous instrument." Alaska Statute 11.81.900(b)(13) defines "dangerous instrument" as:

> any deadly weapon or anything that, under the circumstances in which it is used, attempted to be used, or threatened to be used, is capable of causing death or serious physical injury.

Davidson contends that the evidence was insufficient to show that his foot was a dangerous instrument. In determining whether a foot is a dangerous instrument, the appropriate inquiry is to examine the precise manner in which the foot was actually used.

> Feet, regardless of how they are shod, are not *per se* dangerous instruments. They may become dangerous instruments "if used in such a way as to be capable of causing death or serious physical injury." Whether a foot constitutes a dangerous weapon when used to kick another person is a fact-specific determination to be glean-

---

5. AS 11.81.900(b)(53)(A).

ed from the circumstances surrounding an assault; the inquiry in each case must center on the manner in which the kick was administered and the victim's vulnerability to the kick.[6]

We believe that the jury could properly conclude, under the facts of this case, that Davidson's action of kicking Hall several times in the head while he was lying helplessly on the ground made his foot a dangerous instrument. The jury could conclude that the manner in which he used his foot to strike Hall several times was "capable of causing death or serious physical injury."[7] We accordingly conclude that there was sufficient evidence to support the jury's verdict.

## NEW TRIAL MOTION

Following deliberations in this case, the jury completed and returned three verdict forms.[8] On the first verdict form, the jury placed a check mark indicating that it had found Davidson guilty of assault in the first degree. On the two other verdict forms, the jury placed check marks indicating that it had found Davidson not guilty of the lesser-included offenses of assault in the third degree and assault in the fourth degree, respectively.

When the jury returned these verdicts, Judge Zervos announced to the parties that the jury had found Davidson guilty of assault in the first degree. Judge Zervos polled the jury, and each of the jurors confirmed that he or she had found Davidson guilty of assault in the first degree. Judge Zervos then dismissed the jury. Only after the jury left the courtroom did Judge Zervos distribute copies of the verdict forms to the parties.

The next day, Davidson moved for a new trial, arguing that the jury's verdicts were inconsistent. Davidson contended that, if the jury found him guilty of first-degree assault, it would necessarily have had to find him guilty of the lesser degrees of assault as well, since those lesser offenses were necessarily included in the charged offense. Thus,

Davidson argued, the jury's decision to acquit him of third-degree and fourth-degree assault was logically inconsistent with its decision to convict him of first-degree assault.

Five days later, over Davidson's objection, Judge Zervos reassembled the jury. The judge explained to the jurors that, normally, when a jury finds a defendant guilty of the charged offense, the jury does not fill out the verdict forms for the lesser-included offenses. The judge then asked the jury to answer a written interrogatory concerning the jury's verdicts. In this interrogatory, the jurors were asked to explain what their verdicts on the lesser-included charges meant. The interrogatory was worded thus:

## JUROR INTERROGATORY

Please check the appropriate box below.

The jury returned Not Guilty verdicts on the lesser-included assault charges (Third and Fourth Degree) because:

[ ] We concluded that the defendant did not do what was alleged in the lesser-included charges.

OR

[ ] We thought that if we found the defendant guilty of Assault in the First Degree then we could not find him guilty of the lesser charges (Assault in the Third or Fourth Degree).

OR

[ ] Neither of the above. Please explain.

_____
_____
_____

If you check the first box[,] leave the verdict forms as they are now. If you check the second box, cross out the original check marks on the verdict forms for Third Degree Assault and Fourth Degree

---

6. *Willett v. State*, 836 P.2d 955, 959 (Alaska App. 1992) (citations omitted).

7. AS 11.81.900(b)(13).

8. Additionally, the jury returned not guilty verdicts on the charges of robbery, theft, and tampering with evidence. These verdicts are not at issue in Davidson's appeal.

Assault by placing an X over them and write "Not Used" on the forms.

If you check the third box, please return to the courtroom.

The jurors selected the second option: "We thought that if we found the defendant guilty of Assault in the First Degree then we could not find him guilty of the lesser charges (Assault in the Third Degree or Fourth Degree)." Accordingly, the jurors used an "X" to mark out their previous check marks on the verdict forms for third-degree and fourth-degree assault, and they wrote "Not Used" on these verdict forms.

The jurors were further questioned by the court. They confirmed that they had found Davidson guilty of assault in the first degree and had checked "Not Guilty" on the other verdict forms "because we thought we were supposed to do that."

Judge Zervos subsequently denied Davidson's motion for a new trial because he found that, even without the jury's explanation, the three verdicts were not "strictly" inconsistent. Judge Zervos declined to rely on the jury's answer to the interrogatory or its accompanying explanatory statements in court because of "the problems associated with having reconvened the jury six days after it was discharged." At the same time, however, Judge Zervos found (based on the jurors' answer to the interrogatory) that the jury had in fact "determined that the evidence did prove the greater offense," and that the jury's first-degree assault verdict accurately "indicat[ed] the level of assault that [the jury] found Mr. Davidson to have committed." Judge Zervos concluded that the jury had checked "Not Guilty" on the other verdict forms, not because it believed that the state had failed to prove Davidson guilty of those lesser offenses, but because of "a pro-

cedural error in filling out the verdict forms." Davidson argues on appeal that Judge Zervos erred in denying his motion for a new trial.

■ We disagree with Judge Zervos' ruling that he could uphold the jury's verdict for assault in the first degree on the ground that, even without explanation, the verdict forms were not strictly inconsistent.[9] We conclude, however, that Alaska Evidence Rule 606 did not bar Judge Zervos from considering the jury's response in interpreting the three verdict forms.

Rule 606(b) provides:

(b) **Inquiry Into Validity of Verdict or Indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not be questioned as to any matter or statement occurring during the course of the jury's deliberations or to the effect of any matter or statement upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

The commentary to Rule 606(b) discloses that the Alaska rule was modeled after the federal rule.[10]

The policy behind Rule 606(b) was stated in *Lowery v. State,*[11] where this court stated:

---

**9.** In *Brown v. Anchorage,* 915 P.2d 654, 660 (Alaska App.1996), we stated:

The law governing inconsistent jury verdicts is well settled. When a defendant is tried for two crimes and is convicted of one but acquitted of the other, the conviction must be reversed if the jury's verdicts are logically inconsistent with each other.

The state argued in the trial court and argues on appeal that the verdicts for assault in the third degree and assault in the fourth degree were of

no consequence because they had not been returned in open court. Judge Zervos concluded that the state's contention had no merit because the verdicts had been accepted by the court. We agree with Judge Zervos' disposition of this issue.

**10.** *See* Commentary, Alaska Evidence Rule 606(b), first para-graph; *Titus v. State,* 963 P.2d 258, 260 & n. 2 (Alaska 1998).

**11.** 762 P.2d 457, 463 (Alaska App.1988).

The policy reasons underlying the exclusion of jurors' affidavits or testimony impeaching verdicts include protection of jurors against annoyance or embarrassment, freedom of deliberation, and finality of verdicts. Allowing inquiry into the mental operations and emotional reactions of jurors in reaching a given verdict would invite constant review as a result of tampering and harassment. Moreover, even without pressure by counsel or litigants, many jurors are likely to have second thoughts about their verdicts after they are excused by the Court and the influence of fellow jurors dissipates. Such second thoughts might cause jurors to question their verdicts if permitted to do so. Yet these policy reasons are not promoted by a blanket prohibition against inquiry into irregularities which occur in the jury process when such irregularities result from preju-dicial extraneous information or influences injected into or brought to bear upon the deliberative process. If the judicial system is operating properly, such inquiries should rarely be necessary.

Some jurisdictions interpret Federal Evidence Rule 606(b) as allowing post-verdict inquiry into jury deliberations where the jury might have made a "clerical error." [12] These jurisdictions allow a judge to reassemble a jury and inquire whether the verdict accurately reflects what the jury decided. The inquiry seems to be limited, however, to asking the jury if the verdict reflects what the jury decided; the court cannot ask how the jury arrived at its decision or whether it understood or followed the court's instructions. Other jurisdictions do not allow this sort of inquiry at all, construing Rule 606(b) as only allowing inquiry into whether extraneous prejudicial information or outside influence had an improper effect on the jury.[13]

*Attridge v. Cencorp Division of Dover Technologies International Inc.*[14] is an example of a case where the court allowed such an inquiry. Appellant Attridge, a maintenance engineer who was injured while attempting to repair a machine used to cut computer circuit boards, brought a products liability action against the manufacturer of the machine (Cencorp), who in turn brought a third-party indemnifi-cation action against Sykes Datatronics (Attridge's employer).[15] The defendants claimed contributory negligence.[16] The court provided the jury with a special interrogatory, which the jury completed.[17] After the court polled and discharged the jury, two jurors revealed to the courtroom deputy that the $150,000 verdict that the jury arrived at represented net recovery, rather than an unadjusted verdict.[18] The deputy informed the court. The court recalled the jury the following day, and asked each juror individually and on the record "[w]hat was your understanding as to what the verdict was?" [19] The jurors unanimously responded that they intended the $150,000 figure to represent net, rather than gross, recovery.[20]

On appeal, the defendants asserted that the amount of recovery could not be altered because any inquiry into the meaning of the jury's verdict was prohibited by Federal Evidence Rule 606(b).[21] The *Attridge* court disagreed. The court interpreted Evidence Rule 606(b) as:

> largely restat[ing] Lord Mansfield's broad prohibition against juror testimony. In pertinent part, [the rule] prohibits juror testimony:
>
> > [A]s to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to as-

12. *See* 2 Stephan A. Saltzburg, Michael M. Martin, & Daniel J. Capra, *Federal Rules of Evidence Manual,* 903–05 & n.18 (7th ed.1998) (collecting cases).

13. *See id.* at 903–04 & n. 17(collecting cases).

14. 836 F.2d 113 (2nd Cir.1987).

15. *See id.* at 114.

16. *See id.*

17. *See id.* at 115.

18. *See id.*

19. *Id.*

20. *See id.*

21. *See id.* at 116.

sent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.... [22]

The court noted, however, that Rule 606(b) was obviously not intended to preclude all inquiry into jury verdicts, since the rule "permits testimony that extraneous prejudicial information reached the jury's attention or that other improper external influences interfered with deliberations." [23]

Finally, the court observed that Rule 606(b) was "silent regarding inquiries designed to confirm the accuracy of a verdict." [24]

> Rule 606(b) therefore, by its own terms, does not extend to juror testimony on the veracity of a verdict. Rather, juror testimony is admissible to show that the verdict delivered was not that actually agreed upon. The permissibility of juror testimony hinges upon the purpose for which it is offered. Where the court seeks to correct the mistaken transmission of the verdict from the jury, evidence may be received.[ [25] ]

Similarly, in *United States v. Dotson,*[26] defendants appealed their convictions of conspiring to distribute cocaine and marijuana, distribution of and possession with intent to distribute marijuana, and one defendant was convicted of willfully evading income taxes. After trial, the jury returned a verdict that convicted Dotson of all ten counts in the indictment.[27] Later that evening, two jurors called the judge and stated that the jury had unanimously voted to acquit Dotson on the tenth count.[28] Over the state's objection, the trial court reasoned, and the Fifth Circuit

agreed, that Federal Rule 606(b) allows inquiry into whether the verdict delivered was congruent to the verdict that the jury agreed upon.[29] The *Dotson* court explained:

> An affidavit of a juror is admissible to show that the verdict delivered was not that actually agreed upon ... but a juror may not subsequently impeach a verdict by stating how it was reached... Our research indicates that cases to which this exception applies are few and far between. Nonetheless, courts have accepted that an appropriate means to remedy a clerical error in a verdict discovered by juror affidavits is to simply amend the verdict to reflect the intent of the jury.... [ [30] ]

We are guided by this federal authority in our interpretation of Alaska Evidence Rule 606(b). Like its federal counterpart, Alaska Rule 606(b) prohibits a court from questioning jurors "as to any matter or statement occurring during the course of the jury's deliberations or [as] to the effect of any matter or statement upon [any] juror's mind or emotions as influencing the juror to assent to or dissent from the verdict[,] ... or concerning the juror's mental processes in connection therewith." [31] But, as the *Attridge* court noted, Evidence Rule 606 is silent concerning a court's authority to question jurors when it appears that the written verdict may not accurately convey their group decision.

Judge Zervos did not ask the jurors to justify their verdict or to explain how they arrived at their decision. Rather, he asked the jurors to clarify what their decision had been. Because Rule 606(b) does not prohibit such an inquiry, we conclude that a trial

---

22. *Attridge,* 836 F.2d at 116 (citations omitted).

23. *Id.*

24. *Id.*

25. *Id.* at 116–17 (citations omitted).

26. 817 F.2d 1127 (5th Cir.1987), *vacated in part on other grounds,* 821 F.2d 1034 (5th Cir.1987).

27. *See id.* at 1129.

28. *See id.*

29. *See id.* at 1130.

30. *Id.* (citations omitted); *see also McCullough v. Consol. Rail Corp.,* 937 F.2d 1167, 1170–72 (6th Cir.1991) (proper for judge to inquire whether dollar amount awarded to plaintiff was what jury intended verdict to be, where court did not elicit any testimony about the process by which the jury reached its verdict); *Eastridge Dev. Co. v. Halpert Assocs., Inc.,* 853 F.2d 772, 783 (10th Cir.1988) (proper for trial court to amend verdict to reflect jury's true decision, where jury had mistakenly deducted 20% for contributory negligence from its verdict).

31. *Attridge,* 836 F.2d at 116.

judge has the power to conduct the type of inquiry that was done in Davidson's case.

We also conclude that Davidson's case presents a particularly strong factual setting for allowing an inquiry. In *Attridge* and *Dotson*, the juries returned verdicts which appeared proper and complete on their face. In Davidson's case, on the other hand, the verdict forms themselves engendered the confusion as to what the jury's decision was.

As noted above, Judge Zervos resolved this case by declaring that the three verdict forms were not internally inconsistent. This was error; the verdict forms are inconsistent. However, this error was harmless in light of the jury's clarification of their decision. Judge Zervos was entitled to elicit the jury's clarification and to amend the verdict forms accordingly. The record establishes that the jury unambiguously found Davidson guilty of assault in the first degree. Judge Zervos therefore properly upheld Davidson's first-degree assault conviction, based on the jury's responses to the court's post-verdict inquiry.

The conviction is AFFIRMED.