Adonna L. CROUSE, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

No. A–8434.

Court of Appeals of Alaska.

Nov. 7, 2003.

Stephanie Patel, Law Office of Dan Allan, Anchorage, for Appellant.

John E. McConnaughy III, Assistant Municipal Attorney, and William A. Greene, Municipal Attorney, Anchorage, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### OPINION

COATS, Chief Judge.

A jury intended to convict Adonna L. Crouse of driving under the influence, but it filled out the wrong verdict form and mistakenly convicted her of the lesser-included offense of reckless driving. The district court judge immediately learned of this error, and allowed the jury to revise its verdict. Crouse argues that the court should have entered a judgment convicting her of reckless driving without inquiring into the jurors' intent. She also argues that the court staff's ex parte contact with the jury regarding this verdict form deprived her of her constitutional right to be present at every stage of the trial.

Having reviewed the record, we reject these claims. The trial judge learned as soon as he announced the verdict that it did not accurately convey the jury's unanimous decision; under these circumstances, he was authorized to inquire into the jurors' intent and to send the jury back into deliberations with the proper verdict forms. Moreover,

while we agree that the court staff erred in providing the jury with a verdict form without authorization from the court and notice to the defendant, we conclude that this error was harmless beyond a reasonable doubt. We therefore affirm the decisions of the district court.

*Facts and proceedings*

Crouse went to trial on a charge of driving under the influence.[1] After the close of evidence, District Court Judge Sigurd E. Murphy instructed the jury that if it acquitted Crouse of driving under the influence, it was required to return a verdict on the lesser-included offense of reckless driving. Judge Murphy held up two verdict forms he said would be attached to the back of the jury's packet of instructions—one form to return a verdict on the charge of driving under the influence, and the other to use if the jury returned a verdict on reckless driving.

At some point during deliberations, the jury discovered that it had only one verdict form—the form to use if it returned a verdict on the lesser-included offense of reckless driving. Consequently, after the jurors decided Crouse was guilty of driving under the influence, the forewoman informed the bailiff that they were missing one of the verdict forms. The bailiff relayed this information to the in-court clerk. The in-court clerk, seeing a form on the bench, and assuming it was the missing verdict form, gave it to the bailiff, who delivered it to the jury. The bailiff said nothing to the jurors when he gave them the verdict form. As it turned out, the verdict form on the bench was one the Municipality had proposed and Judge Murphy had rejected. The jury forewoman wrote "guilty" on this form—apparently without reading it—and then sent a note to the court informing it that the jury had reached its verdict. The jurors did not deliberate on the charges between the time the bailiff gave them the wrong form and when they sent a note to Judge Murphy indicating that they had arrived at a decision.

The court reconvened so that the jury's verdict could be announced. But immediately after Judge Murphy read the verdict— which declared that the jury had found Crouse "not guilty" of driving under the influence and "guilty" of the lesser-included offense of reckless driving—the jury forewoman objected, stating: "No, that's not what we reached." Judge Murphy then observed that the verdict form he had just read was not the form he had submitted to the jury, but the one he had rejected. The forewoman and one other juror then explained what had happened: they discovered that a verdict form was missing, asked the bailiff for the missing form, and then wrote "guilty" on that form, believing they were convicting Crouse of driving under the influence. After conferring with counsel, Judge Murphy polled the jury, and all the jurors asserted that they had intended to convict Crouse of driving under the influence. Judge Murphy then questioned the jurors, the in-court clerk, and the bailiff in more detail, and their responses confirmed the above sequence of events.

Crouse objected to Judge Murphy's inquiry into the jurors' intent, arguing that the court was required to enter a conviction for reckless driving because the jury's verdict had been read in open court and was therefore final. In the alternative, Crouse argued that the court should order a mistrial.

Judge Murphy disagreed, and sent the jury back to deliberate with the jury instructions and the proper verdict forms. The jury returned a verdict convicting Crouse of driving under the influence. Crouse then moved for a new trial, arguing that the judge had improperly inquired into the reasoning behind the jury's verdict. She also argued that the bailiff's ex parte communications with the jury had infringed on her constitutional right to be present at every stage of the proceedings. Judge Murphy denied Crouse's new trial motion, ruling that despite the "unfortunate" confusion over the verdict forms, the jurors had properly deliberated and found Crouse guilty of driving under the influence.

*Discussion*

*Did the district court abuse its discretion by inquiring into the jurors' intent instead of entering a judgment for reckless driving?*

On appeal, Crouse renews her claim that the district court should have entered a con-

1. AMC 9.28.020(A).

viction for reckless driving based on the first verdict form signed by the jury. She argues that "[o]nce a verdict has been returned, it may not be impeached, even by the jurors themselves."

■ As general rule, courts are not permitted to inquire into a juror's reasoning processes as a means of impeaching the jury's verdict.[2] That rule is reflected in Alaska Evidence Rule 606(b), which, except in limited circumstances, prohibits courts from questioning jurors about their mental or emotional processes in reaching a verdict.[3] But Rule 606(b) does not bar a court from asking jurors to clarify a verdict when their reasoning processes are not at issue—for instance, "when it appears that the written verdict may not accurately convey their group decision." [4]

In previous cases, we have recognized the trial court's discretion to question jurors to ensure that the judgment entered actually reflects the jury's verdict. In *Davidson v. State*[5] we found no error in the court's decision to question jurors about inconsistent verdicts convicting the defendant of the charged offense but acquitting him of two lesser-included offenses.[6] After the defendant moved for a new trial based on this inconsistency, the trial judge in written interrogatories asked the jurors to clarify their decision; in response, the jurors indicated that they had mistakenly believed they were required to acquit the defendant of the lesser charges if they convicted him of the primary charge.[7] We ruled that Evidence Rule 606(b) permitted such an inquiry, and upheld the jury's verdict.[8]

We reaffirmed the *Davidson* holding in *Wardlow v. State*.[9] In *Wardlow*, shortly after the jury's verdict was announced, the jury forewoman informed the trial judge that she believed the verdicts were mistaken; the jurors had intended to find Wardlow guilty on Count II and not guilty on Count IV, but the judge had announced the verdicts the other way around.[10] No more than two minutes after the judge had excused the jury, he called the jurors and parties back into the courtroom.[11] The judge polled the jury and, after confirming that the verdicts on Counts II and IV had indeed been transposed, amended the judgment to reflect the jurors' true intent.[12] Relying on *Davidson*, we found no error, ruling that the court had authority in these circumstances to clarify the jurors' intent and to "amend the verdicts so that they accurately reflected the jurors' decision." [13]

■ In Crouse's case, Judge Murphy became aware that there was an error in the verdict as soon as it was announced, and before the jurors had been polled or excused. Because Judge Murphy had reason to believe that the verdict did not accurately reflect the jury's decision, he had authority under

---

**2.** *See* A.R.E. 606(b); *Meyer v. State*, 627 P.2d 636, 638 (Alaska 1981).

**3.** A.R.E. 606(b) provides:

Inquiry Into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not be questioned as to any matter or statement occurring during the course of the jury's deliberations or to the effect of any matter or statement upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be pre-

cluded from testifying be received for these purposes.

**4.** *See Davidson v. State*, 975 P.2d 67, 73–74 (Alaska App.1999).

**5.** 975 P.2d 67.

**6.** *Id.* at 70, 71.

**7.** *Id.* at 71–74.

**8.** *Id.* at 71.

**9.** 2 P.3d 1238 (Alaska App.2000).

**10.** *Id.* at 1252.

**11.** *Id.*

**12.** *Id.*

**13.** *Id.*

*Davidson* and *Wardlow* to question the jurors to clarify their intent. Moreover, once a poll of the jury indicated that there was "not unanimous concurrence" with the verdict delivered to the court, Judge Murphy had discretion under Criminal Rule 31 to send the jury back into deliberations with the jury instructions and the correct verdict forms.[14] Given these circumstances, we find no merit to Crouse's claim that the court was obliged to enter judgment for the offense of reckless driving even though the jury intended to convict her of a greater offense.

*Did the court abuse its discretion by denying Crouse's motion for a new trial based on the court staff's ex parte communication with the jury?*

Crouse next argues that the bailiff and in-court clerk deprived her of her constitutional right to be present at every stage of the trial by communicating with the jury—*i.e.*, by delivering the verdict form to the jury—without notice to her.

 A defendant has a right under the federal and state constitutions to be present at every stage of the trial.[15] That right is founded in the accused's rights to confrontation and due process,[16] and includes the right to be present during any communication between the court and jury during jury deliberations.[17] If the trial court fails to notify the defendant of a communication with the jury, we will reverse the defendant's conviction unless the government can prove that the error was harmless beyond a reasonable doubt.[18]

 The Municipality contends that there was no error in the court staff's ex parte contact with the jury because Crouse's presence during this contact would have had no impact on the outcome of the case. But the Municipality confuses the issue of whether Crouse was prejudiced by the actions of court staff with the issue of whether those actions were improper.[19] The defendant has the right to have input into how the court responds to any substantive question from a deliberating jury,[20] which would include the request for a verdict form. Providing a verdict form to the jury without authorization from the court or notice to the defendant has the potential to improperly influence the jury. The defendant therefore has the right to be notified of such a request, if only to ensure that the jury receives the agreed-upon form. We thus hold that it was error for the in-court clerk and bailiff to give the jury the verdict form without obtaining permission from the trial judge.

As a general rule, we will reverse a conviction based on an improper jury communication only if the government fails to show that the error was harmless beyond a reasonable doubt. Crouse urges us to apply a stricter standard to ex parte contacts between court staff and jurors; she argues that such con-

---

**14.** Alaska R.Crim. P. 31(d) provides:

> Poll of Jury. When the verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If, upon the poll, there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

**15.** *See Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970); *Wamser v. State*, 652 P.2d 98, 101 (Alaska 1982); *Dixon v. State*, 605 P.2d 882, 884 (Alaska 1980); *State v. Hannagan*, 559 P.2d 1059, 1063 (Alaska 1977); *see also* Alaska R.Crim. P. 38(a) ("The defendant shall be present ... at every stage of the trial").

**16.** *See* Alaska Const. art. I, §§ 11, 7; *Hannagan*, 559 P.2d at 1063.

**17.** *See Wamser*, 652 P.2d at 101; *Dixon*, 605 P.2d at 884; *Hannagan*, 559 P.2d at 1063–64; *Gafford*

*v. State*, 440 P.2d 405, 417 (Alaska 1968), *overruled on other grounds in Fields v. State*, 487 P.2d 831, 836 (Alaska 1971); *Noffke v. State*, 422 P.2d 102, 105 (Alaska 1967), *overruled on other grounds as stated in Raphael v. State*, 994 P.2d 1004, 1013 n. 40 (Alaska 2000).

**18.** *See Wamser*, 652 P.2d at 103; *Dixon*, 605 P.2d at 884.

**19.** *Cf. Meyer*, 627 P.2d at 638–39 & 639 n. 4 (noting that the defendant's presence was required when the judge discussed an instruction with the jury because the defendant's presence, in the abstract, could have had an impact on the trial court's decision, but holding that the error was harmless under the facts of the defendant's case).

**20.** *See Wamser*, 652 P.2d at 102 ("Constitutional considerations arise whenever a trial judge is not informed of substantive inquiries from a deliberating jury.").

tacts should be reversible error per se because they are less likely to come to the attention of the parties.

However, our supreme court held otherwise in *Wamser v. State*.[21] In *Wamser*, the supreme court concluded that the bailiff had improperly communicated with the jury. In evaluating whether reversal was required, the court applied the same harmless beyond a reasonable doubt standard applied to ex parte communications between the judge and jury. In applying this standard, the court noted that the bailiff was an agent of the court; it also cited out-of-state authority for the principle that it was "irrelevant" that the ex parte communication "came from [the] bailiff rather than a judge."[22] Crouse has not shown why we should depart from the decision in *Wamser* under the circumstances of her case.

Crouse next argues that reversal is required because, in the absence of an electronic record, it is impossible for this court to know what communication took place between the bailiff and jury. But Crouse bases this claim on cases in which there was no contemporaneous record revealing the precise nature of the improper communications that took place.[23] Those cases are easily distinguished. In Crouse's case, the court questioned the jurors, bailiff, and in-court clerk only minutes after the bailiff had delivered the mistaken verdict form to the jury, and that inquiry revealed that there were no improper communications apart from the verdict form itself, which is in the record. In her opening brief on appeal, Crouse does not argue that she was prejudiced because the jury read this form, or because she had no input into the bailiff's decision to give the jury this form—she only argues that she may have been prejudiced by something the bailiff may have said to the jury when he gave it this form. Yet the evidence in the record shows that the bailiff said nothing to the jury when he delivered the verdict form.[24]

■ We conclude that the court staff's error in providing the verdict form to the jury was harmless beyond a reasonable doubt. When polled, the jurors all confirmed that they had reached a verdict convicting Crouse of driving while intoxicated before the forewoman asked the bailiff for the missing verdict form. The jurors also indicated that no deliberations took place between the time the bailiff delivered the form and the forewoman signed it and notified the court that the jury had reached its verdict. The bailiff said nothing to the jury when he handed it the verdict form. And apparently the jurors never read the form, because by signing it they believed they had convicted Crouse of driving under the influence. Given these circumstances, we agree with the trial judge's conclusion that the jury was not improperly influenced by this improper contact with court staff.

■ In her reply brief, Crouse suggests for the first time that the judge's reaction to the mix-up over the verdict forms may have persuaded jurors who had intended to convict her of reckless driving to change their votes. But Crouse waived this claim by raising it for the first time in her reply brief.[25] In any event, the claim is without merit. Judge Murphy polled the jurors within two minutes of when he announced the verdict, and they all stated they had intended to convict Crouse of driving under the influence. Before polling the jury, Judge Murphy ques-

**21.** 652 P.2d 98.

**22.** *Id.* at 102 n. 16 (quoting *United States ex rel. Tobe v. Bensinger*, 492 F.2d 232, 238 (7th Cir. 1974)); *see also* Diane M. Allen, Annotation, *Communication between court officials or attendants and jurors in criminal trial as ground for mistrial or reversal—post-Parker cases*, 35 A.L.R.4th 890 (1985 & supp.2003) (observing that most jurisdictions will not reverse a conviction based on improper communications between the court staff and jury unless the defendant was prejudiced, and listing cases).

**23.** *See Richardson v. State*, 579 P.2d 1372, 1373–74 (Alaska 1978); *Cox v. State*, 575 P.2d 297, 300–01 (Alaska 1978).

**24.** *Cf. Wilson v. State*, 272 Ark. 361, 614 S.W.2d 663, 664 (1981) (ruling that the trial court did not err in denying a motion for new trial based on the testimony of the defendant and another man that they had seen the bailiff answering questions from the jury, because the defendant failed to show that the bailiff had advised the jury on the law).

**25.** *See Petersen v. Mut. Life Ins. Co.*, 803 P.2d 406, 411 (Alaska 1990).

tioned two jurors about how they had obtained the wrong verdict form, but he said nothing to intimidate the jurors or to suggest that they had done anything wrong. We consequently find no merit to Crouse's claim that the court's brief inquiry may have persuaded jurors who believed Crouse was guilty of only reckless driving to convict her of a greater offense. We therefore conclude that Judge Murphy did not abuse his discretion by denying Crouse's motion for a new trial.

*Conclusion*

The decisions of the district court are AFFIRMED.