*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ANDREA TRESCOT, M.D. and ALGONE CENTER, LLC, | ) ) ) | Supreme Court No. S-17710 |
| Petitioners, | ) ) | Superior Court No. 3AN-14-10021 CI |
| v. | ) ) | O P I N I O N |
| TABATHA FOY, MARK FOY, MICHAEL FOY, and ALISSA FOY, a minor child, | ) ) ) ) | No. 7548 – August 6, 2021 |
| Respondents. | ) ) ) | |

Petition for Review from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Jennifer Henderson, Judge.

Appearances: Whitney L. Wilkson and Howard Lazar, Delaney Wiles, Inc., Anchorage, for Petitioners. Charles W. Coe, Law Offices of Charles W. Coe, Anchorage, and Colleen A. Libbey, Libbey Law Offices, LLC, Anchorage, for Respondents. Susan Orlansky, Reeves Amodio LLC, Anchorage, for Amicus Curiae Alaska Association of Criminal Defense Lawyers. Margaret Simonian, Dillon & Findley, PC, Anchorage, for Amicus Curiae Alaska Association for Justice.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

WINFREE, Justice.

## I.    INTRODUCTION

A jury entered a verdict for the defense in a medical malpractice suit, finding medical negligence but also finding that the negligence did not cause harm. During later conversations with jurors, plaintiffs' representatives learned that at least some jurors believed the verdict was incorrectly entered because, although there were at least 10 votes (among the 12 jurors) to find that there was medical negligence, there were not 10 votes to find that the medical negligence did not cause harm. Juror affidavits then were prepared and filed with a motion for a new trial. The trial court admitted the affidavits into evidence and exercised its discretion to order a new trial in the interests of justice. The defendants petitioned for our review of the new trial order, which we granted. We conclude that it was error to admit the juror affidavits into evidence and, therefore, that there was no evidentiary basis for the trial court to grant a new trial. We reverse the order for a new trial and remand for entry of judgment in favor of the defendants consistent with the jury verdict rendered in court at the close of the trial.

## II.    FACTS AND PROCEEDINGS

Tabatha Foy sought medical care for abdominal pain at Algone Center, LLC in July 2012, and Dr. Andrea Trescot prescribed Reglan. Foy reportedly then developed uncontrolled body movements, and she later was diagnosed with medication-induced dyskinesia caused by Reglan. Foy, along with her husband, adult son, and minor daughter, brought a medical malpractice action against Dr. Trescot and Algone Center (collectively Dr. Trescot). Dr. Trescot responded that she was not negligent in prescribing or treating Foy with Reglan and disputed Foy's claimed dyskinesia.

After trial the 12-person jury was instructed to deliberate and answer a special verdict form containing two questions: (1) was Dr. Trescot negligent and, if so, (2) was Dr. Trescot's negligence the legal cause of Foy's injuries. The trial court instructed the jury: "At least ten [jurors] must agree to the answer to each question on

-2-                    **7548**

the verdict form . . . . When at least ten of you reach agreement on each question that you are required to answer, your foreperson should date and sign the verdict form." During deliberations the jury sent a note requesting a "clarification as to what constitutes a final vote." But the jury soon sent another note stating that the answer had been found and there was no need for the court to respond. The jury later returned its verdict, answering "Yes" in response to the negligence question and "No" in response to the causation question.

After the verdict was read aloud in open court, Foy requested that the court poll the jury.[1] The court explained the polling process to the jurors: "I'm going to turn to each of you and ask if the verdicts that I've just read were your true and correct verdicts, and that just lets the parties know . . . we have . . . at least ten that are in agreement with these verdicts." The court then asked each of the 12 jurors: "[A]re these verdicts your true and correct verdicts?" Each juror responded affirmatively.

The court asked if there was anything else of substance needing attention before the jury was dismissed, and the parties said there was not. The court informed the jurors that they were no longer prohibited from talking with others about the case and that they were welcome to talk with the parties' attorneys about the attorneys' performances, but the court cautioned them not to speak "about the substance of [their] deliberations." The court invited the jurors to speak with the attorneys outside of the courtroom or to leave contact information for the attorneys.

Foy's attorney contacted a juror who had left contact information. Foy's attorney later stated that she was seeking feedback on the trial but that "one of the very

---

[1] *See* Alaska R. Civ. P. 49(a) ("Any party may require the jury to be polled as to any verdict, which is done by asking each juror if it is the juror's verdict. If upon such polling it appears that a verdict has not been agreed upon, the jury shall be sent out for further deliberation.").

first things [the juror] said to [her] was [']I don't agree with that verdict.['] " Foy's attorney hired a private investigator to contact jurors regarding the trial and to inquire about "their final vote[s] on the questions before the foreperson signed the jury verdict form" and the total vote count. The investigator contacted and interviewed jurors, and she eventually obtained four juror affidavits regarding their votes on the verdict questions. The jurors stated in their affidavits that the court did not ask what their answers were to each separate question on the verdict form, and three jurors attested: "If the Court had asked me my answer to Question No. 2, I would have answered 'Yes.' "

Foy moved for a mistrial, relying on the affidavits to assert that the jury did not reach a verdict on the causation question. A few days later the court held oral argument on a motion Dr. Trescot had previously filed, and the court briefly addressed the juror affidavits and the possibility of a mistrial. Dr. Trescot later opposed Foy's motion for a mistrial and moved to strike the juror affidavits. Dr. Trescot argued that juror affidavits were not permitted for purposes of impeaching a verdict except in cases of "fraud, bribery, or other obstructions of justice." Dr. Trescot also noted that Foy had failed to object to the manner in which the jurors were polled and that Foy's challenge thus was waived. Foy responded that the affidavits were permissible evidence because the jury had not reached a verdict. Foy also asserted that she did not waive a challenge to the verdict because when the jury was polled there was no way to know the jury had failed to reach a verdict.

The trial court denied Dr. Trescot's motion to strike, concluding that the court was permitted to "consider affidavits or juror testimony to 'clarify a verdict,' so long as the jurors' 'reasoning processes are not at issue.' "[2] Because "the[] affidavits

---

[2] The trial court quoted *Crouse v. Municipality of Anchorage*, 79 P.3d 660, 663 (Alaska App. 2003).

purport to show that the jury never met the [ten]-vote minimum on one part of the verdict they entered," the court admitted the affidavits as evidence. The court scheduled an evidentiary hearing on the mistrial motion, noting that it was "particularly interested in how [Foy] contacted jurors and how [Foy] came to know about the alleged lack of agreement on the issue of causation." At the evidentiary hearing Foy's attorney and investigator explained their method of interviewing and obtaining affidavits from the jurors.[3]

The trial court ultimately granted a mistrial. The court concluded that "the jury did not reach a verdict on the issue of causation, despite returning a verdict on causation." Dr. Trescot moved for reconsideration, which the court denied. Dr. Trescot petitioned for review of the superior court's grant of a mistrial, and we granted the petition.[4]

## III.   STANDARD OF REVIEW

A trial court's decision to admit evidence is reviewed for abuse of discretion, "[b]ut when the admissibility of evidence . . . turns on a question of law, we apply our independent judgment."[5] When deciding whether to grant a mistrial, a trial court has "wide discretion," and we review the court's decision for abuse of discretion.[6]

---

[3]      Although Dr. Trescot suggests that the investigation was improper, the record before us indicates that Foy's attorney was discreet and thoughtful in proceeding with her investigation.

[4]      *See* Alaska R. App. P. 402 (providing for appellate review when circumstances outweigh "the sound policy behind the rule requiring appeals or petitions for hearing to be taken only from final judgments or decisions").

[5]      *Marron v. Stromstad*, 123 P.3d 992, 998 (Alaska 2005).

[6]      *Young v. State*, 374 P.3d 395, 405 (Alaska 2016) (quoting *Amidon v. State*, 565 P.2d 1248, 1261 (Alaska 1977)).

## IV. DISCUSSION

"A new trial may be granted . . . in an action in which there has been a trial by jury . . . if required in the interest of justice."[7] The trial court admitted the juror affidavits as evidence and, after an evidentiary hearing, granted a mistrial based on the affidavits. The court concluded that "the jury did not reach a verdict on the issue of causation, despite returning a verdict on causation." The court noted that the discrepancies between the jurors' in-court answers and their affidavits were explained by juror confusion: "[S]ome of the jurors were confused by the phrasing of the [c]ourt's question or by the voting process itself." The court noted that Foy's attorney and investigator "acted diligently and properly in obtaining these affidavits" and that "there is no evidence that the investigator harassed the jurors or asked any questions about their mental processes."

A court may not grant a mistrial based on evidence that is inadmissible under Alaska Evidence Rule 606(b).[8] Rule 606(b) prohibits questioning a juror about or obtaining an affidavit regarding anything that occurred during deliberations or "the effect of any matter or statement upon . . . [a] juror's mind or emotions as influencing the juror to assent to or dissent from the verdict . . . or concerning the juror's mental processes in connection therewith." We previously have indicated that the prohibition on the use of juror affidavits to impeach a verdict is broad.[9] Before the formal adoption of the Rules of Evidence, we recognized: "It is the overwhelming weight of authority

---

[7]     Alaska R. Civ. P. 59(a).

[8]     *Mattox v. State, Dep't of Corr.*, 397 P.3d 250, 254 (Alaska 2017).

[9]     *See, e.g.*, *Thomas v. State*, 377 P.3d 939, 950 (Alaska 2016); *Titus v. State*, 963 P.2d 258, 261 (Alaska 1998).

that a juror generally cannot impeach the jury's verdict by . . . testimony or affidavit."[10] And we have "repeatedly said that [we] will not consider juror affidavits for the purpose of impeaching the jury verdict, except in cases of fraud, bribery, or other obstructions of justice."[11] We have described Rule 606(b) as "impos[ing] a general ban on using juror testimony to impeach verdicts"[12] and the situations in which juror testimony is permitted to impeach a verdict as "exceptional."[13] Exceptions to Rule 606(b)'s general prohibition permit a juror to testify about whether "extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror."[14]

---

[10] *West v. State*, 409 P.2d 847, 852 (Alaska 1966).

[11] *Irving v. Bullock*, 549 P.2d 1184, 1188 (Alaska 1976); *see also* Alaska R. Evid. 606(b) cmt. (explaining that "rule reflects the same spirit" as cases decided before adoption of rule).

[12] *Titus*, 963 P.2d at 261.

[13] *Thomas*, 377 P.3d at 950.

[14] The relevant text of Rule 606(b) provides:

> Upon an inquiry into the validity of a verdict . . . a juror may not be questioned as to any matter or statement occurring during the course of the jury's deliberations or to the effect of any matter or statement upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict . . . or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about

(continued...)

In *Titus v. State* we explained the policies animating Rule 606(b):

> The commentary to Rule 606(b) recognizes that the rule serves competing policy interests. The rule imposes a general ban on using juror testimony to impeach verdicts in order to protect jurors from harassment, to encourage free jury deliberation, and to promote the finality of verdicts. At the same time, Rule 606(b) protects the interest in avoiding injustice by creating exceptions to the general ban in situations where irregularities have marred the integrity of the deliberation process. The interest in avoiding injustice protected by the rule can be broken down into two related concerns: ensuring that verdicts are accurate and that they are reached through a fair process.[15]

Dr. Trescot asserts that Rule 606(b) "generally prohibits a juror from testifying about the jury's deliberations"[16] and "specifically limit[s] impeachment of jury verdicts to inquiries about extraneous prejudicial information and outside influences." Dr. Trescot contends that the affidavits are plainly inadmissible under the rule because they are unrelated to "extraneous prejudicial information" or "outside influences."

Foy responds that "Rule 606(b) is silent as to whether . . . inquiry into the vote is permitted." Foy relies on several court of appeals cases to support her argument, contending that the affidavits are admissible because they concern "whether or not the jury reached a verdict" rather than "juror deliberations." Foy also points to cases from other jurisdictions to support the argument that jurors are permitted to impeach a verdict

---

[14]     (...continued)
which the juror would be precluded from testifying be received for these purposes.

[15]     *Titus*, 963 P.2d at 261-62 (citations omitted) (citing Alaska R. Evid. 606(b) cmt.).

[16]     *Carleson v. State*, No. A-8766, 2007 WL 4322999, at *4 (Alaska App. Dec. 12, 2007).

by affidavit when the purpose is showing that no verdict was reached. According to Foy, it "is clear . . . that the jurors did not reach a verdict because at no point did the jury have at least ten 'yes' votes or 'no' votes on causation, as required by the instructions and the statute," which "requires upsetting the verdict."

We conclude that the juror affidavits in this case are inadmissible under Rule 606(b). The affidavits do not fit into a recognized exception to the Rule: They do not involve extraneous prejudicial information or outside influences brought to bear upon the jury.[17] And although "the line between what is the proper subject of subsequent inquiry and what is to be insulated from review is a fine one,"[18] the affidavits are inadmissible under Rule 606(b) because the court properly instructed the jury regarding the number of votes needed,[19] read the verdict in court, and polled the jury to confirm the verdict,[20] and nothing in these normal trial processes indicated there was an issue with the verdict.

---

[17]     *See, e.g.*, *Mattox*, 397 P.3d at 254 (noting Rule 606(b) contains exceptions for "when 'extraneous prejudicial information was improperly brought to the jury's attention or . . . any outside influence was improperly brought to bear upon any juror' " (quoting Alaska R. Evid. 606(b))); *see also* Alaska R. Evid. 606(b) cmt. ("[Rule 606(b)], like the Federal Rule after which it is modeled, limits impeachment of jury verdicts to inquiries about extraneous prejudicial information and outside influences which may have been improperly brought to bear upon any juror.").

[18]     Alaska R. Evid. 606(b) cmt.

[19]     We previously have stated that we assume a jury follows a trial court's instructions. *Cummins, Inc. v. Nelson*, 115 P.3d 536, 545 (Alaska 2005).

[20]     The Alaska Association of Criminal Defense Lawyers and the Alaska Association for Justice (AACDL) assert that more careful polling questions would increase polling process accuracy, and we agree. A trial court should thoroughly explain the polling process to minimize potential juror confusion and should avoid using Alaska Civil Rule 49(a) language that may be unclear.

This case therefore is distinguishable from the court of appeals' cases, which Foy suggests we should follow, holding that inquiry into a verdict is permitted when necessary to clarify a verdict.[21] Nothing on the face of the verdict form or during the reading of the verdict or polling of the jury suggested an issue with the verdict.[22] In light of this distinction, holding that the affidavits in this case were admissible would clearly undermine the policies animating Rule 606(b). If the rule were interpreted to permit attorneys to obtain and present evidence of individual jurors' votes when nothing

---

[21]     *See Crouse v. Municipality of Anchorage*, 79 P.3d 660, 663-64 (Alaska App. 2003) (holding Rule 606(b) permitted trial court to clarify verdict after foreperson objected to verdict immediately after it was read in open court); *Wardlow v. State*, 2 P.2d 1238, 1252 (Alaska App. 2000) (holding superior court did not err by seeking clarification of jury's verdict when two minutes after jury was discharged juror mentioned verdict had been read improperly); *Davidson v. State*, 975 P.2d 67, 73 (Alaska App. 1999) (holding trial court did not violate Rule 606(b) by seeking jury's clarification of verdict when jury returned verdicts that were inconsistent as matter of law).

[22]     Foy also points to a variety of cases from other jurisdictions. These cases are not binding precedent, and they do not persuasively show Rule 606(b) permits an attorney's ex parte questioning of jurors about their votes when no need for clarification was apparent from reading the verdict aloud, polling the jury, or the face of the verdict form. *See Fox v. United States*, 417 F.2d 84, 88-89 (5th Cir. 1969) (holding juror testimony admissible after juror had remained silent during in-court polling); *Hamburg-Bremen v. Fire Ins. Co. v. Pelzer Mfg. Co.*, 76 F. 479, 481-82 (4th Cir. 1896) (permitting juror affidavits to correct clerical error because error was "uncontradicted in any respect"); *TeeVee Toons, Inc. v. MP3.com, Inc.*, 148 F. Supp. 2d 276, 277-78 (S.D. N.Y. 2001) (holding juror testimony admissible after court's in camera interviews of jurors and other evidence confirmed mathematical error in damages calculation); *Latino v. Crane Rental Co.*, 630 N.E.2d 591, 592-93 (Mass. 1994) (holding court's questioning of jurors permitted because "overt factors" indicating issue with verdict, including audible disagreement during polling, were present); *Routhier v. City of Detroit*, 61 N.W.2d 593, 595 (Mich. 1953) (holding court's questioning of jurors permitted after polling revealed verdict announced was incorrect); *Kennedy v. Stocker*, 70 A.2d 587, 589-90 (Vt. 1950) (juror testimony admissible after polling indicated computation error).

in the normal trial process indicated an issue with the verdict, every attorney would have an incentive to do so after each case. This would increase the risk of juror harassment after jury service is completed and undermine the finality of all jury verdicts. Such an interpretation also would threaten the deliberative process, as jurors likely would feel it necessary to discuss or explain their votes (and therefore their mental deliberations) in conversations with attorneys and investigators. And as the commentary to Rule 606(b) explicitly contemplates: "[E]ven without pressure by counsel or litigants, many jurors are likely to have second thoughts about their verdicts after they are excused by the [c]ourt and the influence of fellow jurors dissipates[, and s]uch second thoughts might cause jurors to question their verdicts if permitted to do so."

We therefore hold that the juror affidavits are inadmissible under Rule 606(b).[23] Because no admissible evidence provides a basis for granting a mistrial, granting the mistrial was an abuse of discretion.

---

[23] AACDL argues that we "should distinguish between statements offered to impeach a verdict and statements offered to show that no unanimous verdict was reached" in a criminal case, because a lack of unanimity would violate the constitution. *See* Alaska Const. art. I, § 11. We note that constitutional considerations may be uniquely relevant in criminal cases, but those issues are not before us in this case. *See Ramos v. Louisiana*, 140 S. Ct. 1390, 1393-402 (2020) (explaining unanimous criminal verdicts are required by Sixth Amendment of United States Constitution and incorporated against States by Fourteenth Amendment); *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 870 (2017) (holding Sixth Amendment of United States Constitution requires courts to consider evidence of racial bias during criminal jury deliberations); *Khan v. State*, 278 P.3d 893, 897 (Alaska 2012) (explaining unanimous criminal verdicts are required by Alaska Constitution).

To the extent Foy argues that holding the juror affidavits in this case inadmissible would violate her constitutional rights, that argument is waived as insufficiently briefed. *See Kaiser v. Sakata*, 40 P.3d 800, 805 n.15 (Alaska 2002) (dismissing constitutional claims as waived for insufficient briefing).

## V. CONCLUSION

The trial court's grant of a new trial is REVERSED, and we REMAND for entry of judgment in Dr. Trescot's favor consistent with the jury verdict.