Lawrence W. BROWN, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

No. A–5400.

Court of Appeals of Alaska.

May 3, 1996.

Michael B. Logue, Gorton & Associates, Anchorage, for Appellant.

Carmen E. ClarkWeeks, Deputy Municipal Prosecutor, Anchorage, for Appellee.

Before BRYNER, C.J., MANNHEIMER, J., and ANDREWS, Superior Court Judge.* [Coats, Judge, not participating.]

*OPINION*

BRYNER, Chief Judge.

Following a jury trial presided over by District Court Judge Natalie K. Finn, Lawrence W. Brown was convicted of one count of cruelty to animals, Anchorage Municipal Code (AMC) § 17.10.060, and acquitted of one count of unlawfully discharging a firearm, AMC § 08.05.240(A). Brown appeals, contending that the trial court erred in allowing the jury to hear evidence of prior misconduct, in failing to give Brown's proposed jury

instructions on self-defense, and in denying his post-trial motion to dismiss the cruelty to animals conviction on the ground that the jury's verdict of conviction was inconsistent with its verdict of acquittal on the charge of unlawfully discharging a firearm. We affirm.

One evening in October 1993, Brown went out for a walk with his wife and daughter through his family's neighborhood in Anchorage; Brown carried a gun at his side in a holster for protection against dogs. During the walk, the Brown family encountered an unattended dog, a German Shepherd. Brown approached and fired a single shot into the dog's head. The bullet entered the skull from the front, almost between the eyes, killing the dog.

As a result of this incident, the Municipality of Anchorage charged Brown with one count of cruelty to animals and one count of unlawfully discharging a firearm within the municipality. The prosecution's evidence at trial tended to show that the shooting was unprovoked. The dog's owner testified that her dog was old, mild, and not excitable. A motorist passing through the neighborhood during the incident testified that he saw Brown approach the dog, which did not seem to be barking, growling, or threatening. After driving by, the motorist heard a gunshot and saw Brown, gun in hand, standing over the dog's body. Another witness testified that she saw Brown cross the road (leaving his wife and child behind) and approach a dog, which was wagging its tail and did not appear to be barking or growling. According to the witness, Brown patted his leg as he got near the dog, as if gesturing to greet or pet it. Brown then put his hand on the back of the dog's head. At this point, the witness looked away. A moment later, she heard the gunshot, turned, and saw Brown dragging the dog's body up against a fence. After that, Brown and his family walked away.

Brown claimed self-defense. Brown and his wife both testified that a large dog came toward them from out of the darkness, causing them to become concerned for their safety. Brown first attempted to be friendly to the dog, calling to it and patting his leg, but

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

it responded by crouching; he then gestured, trying to scare the dog away, but it suddenly lunged. Brown unholstered his gun and shot the dog in order to protect himself and his family.

Prior to trial, Brown moved for a protective order to preclude the prosecution from presenting evidence of a recent incident in which Brown had shot and killed another dog. The previous incident, which occurred less than ten months before the shooting for which Brown was being tried, began when two loose dogs attacked Brown's wife as she walked past a neighbor's driveway. One of the dogs bit and injured her thigh. Brown's wife escaped the animals and immediately reported the attack to Brown. Brown told her to call the police; as she did so, he armed himself with a rifle and went to his neighbor's house to investigate. Upon arriving there, he shot and killed one of the dogs. Brown subsequently reported that the dog had charged him. The shooting was investigated by the police, and no charges were filed. In seeking to exclude evidence of this incident, Brown argued that it was propensity evidence whose admission was barred by Alaska Rule of Evidence 404(b).

After hearing an offer of proof concerning the prior shooting, Judge Finn provisionally granted Brown's motion for a protective order. The judge ruled that this evidence would be excluded from the prosecution's case-in-chief, but that the prosecution could later request its admission if the prior incident became relevant to rebut any specific defense Brown might raise. After the prosecution rested its case-in-chief, Brown called his wife as a defense witness; when her testimony on direct examination made it clear that Brown would claim self-defense, the prosecution requested permission to cross-examine Brown's wife about the prior incident. Over Brown's objection, Judge Finn granted the request, ruling that evidence of the prior shooting was relevant to establish motive, intent, and lack of mistake or accident.

On appeal, Brown contends that this ruling was error. We disagree. Alaska Rule of Evidence 404(b) provides, in relevant part:

Evidence of other crimes, wrongs, or acts is not admissible if the sole purpose for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith. It is, however, admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

By its own terms, this rule bars the admission of evidence of other similar conduct only when the "sole purpose" of the evidence is to prove propensity. In the present case, evidence of the prior shooting incident was not offered as character evidence to prove that Brown had probably engaged in the conduct with which he was charged. In other words, the evidence was not offered to show that Brown had previously shot a dog and therefore probably shot the dog that he was charged with killing in the present case. In fact, there was no dispute at trial as to whether Brown committed the act with which he was charged: Brown readily acknowledged that he had shot the dog.

The issues contested in this case centered not on what Brown had done but on why he had done it: whether Brown actually believed it necessary to shoot the dog for protection of himself and his family and, if so, whether that belief was reasonable. Brown's defense plainly asserted his subjective belief that his conduct was necessary; it also asserted the reasonableness of his purported conclusion that killing the dog was necessary.

As correctly recognized by Judge Finn, evidence of the prior shooting was highly probative of Brown's state of mind, or motive: to show that Brown had a strong reason to dislike dogs and therefore might have acted out of animosity, not fear. The evidence was equally probative on the issue of intent: to show the implausibility of Brown's claim that the dog lunged at him and to establish that his fears, if they existed at all, were unreasonable. *See Adkinson v. State,* 611 P.2d 528 (Alaska 1980); *see also Quave v. Bardwell,* 449 So.2d 81 (La.App.1984); *Rushin v. State,* 154 Ga.App. 41, 267 S.E.2d 473 (1980). *See generally* Edward J. Imwinkelried, *Uncharged Misconduct Evidence,*

§ 5:04 at 8 (1984; 1995 rev.); 22 Charles A. Wright & Kenneth W. Graham, *Federal Practice and Procedure,* § 5242 at 487–88 (1978).

Judge Finn did not abuse her discretion in admitting evidence of the prior incident.

■ Brown next contends that Judge Finn erred in failing to give his proposed instructions on self-defense. Prior to final arguments, Brown submitted a packet of standard self-defense instructions and proposed that they be given to the jury as to both of the charges in the case. These proposed instructions required the municipality to prove beyond a reasonable doubt that Brown had not "reasonably believe[d]" that firing the gun and shooting the dog were necessary to prevent death or physical injury.[1] The prosecution objected, arguing that Brown should be required to prove that his conduct was justified and that the prosecution had no duty to disprove his defense.

In support of this argument, the prosecution pointed out that Anchorage's cruelty to animals ordinance expressly provides for an exception that applies when killing an animal is necessary for self-defense. Under AMC 17.10.060(A), a person may not "intentionally or with criminal negligence kill ... an animal;" however, subsection (B)(2) of the ordinance specifies that "[s]ubsection A of this section does not apply to[ ] killing or injuring an animal where necessary to protect a human being ... from death or bodily injury." Citing *Trout v. State,* 866 P.2d 1323 (Alaska App.1994), the prosecution argued that when a statute defines a crime but creates an exception to that offense, the defendant, rather than the prosecution, bears the bur-

den of proof as to the existence of the exception.[2] The prosecution thus urged the court to hold, as to the exception stated in subsection (B)(2) of the cruelty to animals ordinance, that Brown should be required to bear the burden of proof by at least a preponderance of evidence, and perhaps by clear and convincing evidence.

As to the offense of unlawfully discharging a firearm within the municipality, the prosecution pointed out that the municipal ordinance created no specific exception. The prosecution argued that, under these circumstances, if Brown was entitled to any defense, the defense should be governed by state law, which specifies that the common-law defense of necessity should apply in the absence of any specific statutory exceptions or defenses dealing with necessity. AS 11.81.320(a)(1). To bolster its position that necessity, rather than self-defense, should apply, the prosecution noted that the definition of self-defense contained in Alaska's revised criminal code does not extend to the use of force against animals, instead applying only to force used by "a person" against "another person." *See* AS 11.81.330(a).

In arguing that Brown's charge of unlawfully discharging a firearm should be governed by the defense of necessity, rather than the defense of self-defense, the only distinction the prosecution emphasized was the distinction in the applicable burden of proof. The prosecution pointed out that, under state law, necessity is an affirmative defense, which the defendant must prove by a preponderance of the evidence. *See* AS 11.81.320(b) and AS 11.81.900(b)(1)(B). In

---

1. Brown based his proposed instructions on AS 11.81.335, which provides in part:
    (a) Except as provided in (b) of this section, a person may use deadly force upon another person when and to the extent
    (1) the use of nondeadly force is justified under AS 11.81.330; and
    (2) the person reasonably believes the use of deadly force is necessary for self defense against death [or] serious physical injury....

2. Both below and on appeal, the municipality has mistakenly relied on *Trout* for the proposition that the defendant bears the burden of proving, by at least a preponderance of the evidence, the existence of a statutory exception to a crime.

In *Trout,* we held that a statutory exception to a crime ordinarily need not be treated as an element of an offense and thus need not be negated unless the defense presents some evidence to place the defense in issue. However, we expressly declined to determine who should bear the burden of proving or disproving the exception after some evidence had been presented to place it in issue; we likewise declined to determine the quantum of proof that would apply. In the context of the present case, *Trout* at most establishes that Brown was required to produce some evidence of self-defense or necessity before he was entitled to an instruction on either defense.

contrast, self-defense is a defense, which the prosecution must disprove beyond a reasonable doubt upon the presentation of some evidence placing the defense in issue. *See* AS 11.81.300, AS 11.81.330, and AS 11.81.900(b)(15)(B). The prosecution repeatedly asserted that Brown should be required to bear the burden of proving that it was necessary for him to fire his gun in self-defense.

In reply to the prosecution's arguments, Brown insisted that the municipality's cruelty to animals ordinance should be construed to embody the traditional right of self-defense. In support of his contention, Brown noted the similarity between the language of the state's self-defense statutes—which allow a person to use deadly force when the person "reasonably believes" the force to be "necessary for self defense against death [or] serious physical injury," AS 11.81.335(a)(2)—and the language of the statutory exception in subsection (B)(2) of the municipality's cruelty to animals ordinance—which authorizes "killing or injuring an animal where necessary to protect a human being or domesticated animal from death or bodily injury." AMC 17.10.060(B)(2). Brown also noted that it would be anomalous to allow a person greater latitude to use deadly force against another person than against a dog.

Brown thus characterized the necessity exception, as set forth in subsection (B)(2) of the municipal cruelty to animals ordinance, to be the equivalent of a self-defense guarantee. Brown argued that, for this reason, the prosecution should be required to shoulder the burden of disproving the exception beyond a reasonable doubt. Brown further argued that, because both of his charges were based on the same conduct, the same right of self-defense—and the same burden of proof—should extend to the offense of unlawfully discharging a firearm, even though the municipal code created no express exceptions to that offense.

Judge Finn initially ruled in favor of Brown on one charge and in favor of the municipality on the other. As to the cruelty to animals charge, the judge agreed with Brown that the exception set forth in AMC 17.10.060(B)(2) was essentially meant to give Brown the traditional right to self-defense. Because this defense was expressly provided for in the cruelty to animals ordinance, Judge Finn found no need to rely on the state necessity statute, which applies only if no "other statute defining the offense provides exemptions or defenses dealing with the justification of necessity," AS 11.81.320(a)(1). Thus, as to the cruelty to animals charge, Judge Finn declared that the prosecution would be required to disprove subsection (B)(2)'s exception beyond a reasonable doubt.

To implement this decision, Judge Finn drafted an instruction treating the exception as an essential element of the offense of cruelty to animals—an element whose nonexistence the prosecution was required to prove:

> The essential elements of the offense alleged in the complaint are as follows:
>
> First, that the event in question occurred at or near the time and place charged in the complaint;
>
> Second, that the defendant did intentionally or with criminal negligence;
>
> Third, kill or abandon an animal; and
>
> Fourth, that killing an animal was not necessary to protect a human being from death or bodily injury.
>
> If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you shall find the defendant guilty.
>
> If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you shall find the defendant not guilty.

As to the charge of unlawfully discharging a firearm, however, Judge Finn initially reached a contrary result. Relying on the municipal code's failure to specify any defense or exception for this offense, the judge reasoned that Brown's right of self-defense should be governed by the state necessity statute, which created an affirmative defense that required Brown to bear the burden of proof by a preponderance of the evidence. Judge Finn declared her intention to prepare a jury instruction to this effect.

Following a recess in proceedings, however, the judge informed the parties that she had changed her mind. Judge Finn announced that giving the jury disparate instructions on the two charges would be unduly confusing. Concluding that "self-defense is self-defense," and finding that self-defense is not an affirmative defense, the judge stated that she had elected to make the instructions consistent as to both offenses and to require the prosecution to disprove self-defense beyond a reasonable doubt as to both charges. Since express statutory language comparable to that written into the cruelty to animals ordinance's necessity exception did not exist as to the discharging a firearm charge, the judge drafted an instruction for that offense advising the jury that "a person may discharge a firearm when and to the extent that the person reasonably believes the discharge of a firearm is necessary to defend him or herself or another person from death or physical injury." The instruction told the jury to acquit Brown "[u]nless the Municipality has proven beyond a reasonable doubt that the defendant did not discharge a firearm in self-defense[.]"

The prosecution objected to the trial court's rulings as to both offenses and unsuccessfully sought interlocutory review by this court. In contrast, Brown voiced no objection at all to the court's instruction on the essential elements of the offense of cruelty to animals, which incorporated the necessity exception. As to the instruction dealing with discharging a firearm, Brown did note "an objection for the record," cryptically stating that he "should object to the form as opposed to the form submitted to the court" in his own proposed instructions. Brown separately objected to the trial court's refusal to instruct the jury on the municipal code's definition of what constitutes an "attack" by a dog—a definition Brown thought necessary to assist the jury in assessing the reasonableness of his conduct.

During final argument, Brown argued his theory of self-defense as to both charges, insisting that he had been reasonable in believing it necessary to kill the dog in order to protect himself and his family. In response, the municipality urged the jury to find that Brown had been the aggressor, that reasonable alternatives to killing the dog had been available, and that, therefore, "the dog's death was not necessary[,]" even "if [Brown] had some idea of defending himself."

Having been acquitted of unlawfully discharging a firearm and convicted of cruelty to animals, Brown now complains that his proposed self-defense instructions should have been incorporated into the instructions that the trial court gave in connection with the cruelty to animals charge. Brown suggests that the failure to instruct on self-defense as to the cruelty to animals charge resulted in the disparate verdicts acquitting him of unlawfully discharging a firearm but convicting him of cruelty to animals.

As our explanation above makes clear, however, Brown never objected to the trial court's instruction on the essential elements of cruelty to animals; this instruction incorporated the necessity defense that he asserted below. And at no time after Judge Finn decided to incorporate subsection (B)(2)'s necessity exception into the jury instruction dealing with the essential elements of cruelty to animals did Brown request any supplemental instruction on self-defense as to that charge. Brown is thus entitled to relief only upon a showing of plain error.

Although the literal wording of the cruelty to animals instruction might be interpreted to make Brown's self-defense claim contingent on the existence of an actual need for self-defense rather than on his reasonable belief that self-defense was necessary, we find no plain error under the circumstances presented here. The trial court and the parties alike construed the instructions given below to afford Brown essentially the same self-defense claim as to both of the charges against him. Brown fully argued the same theory of self-defense as to both charges, specifically asserting that he could not be convicted of either charge if the jury concluded that he had reasonably believed it necessary to kill the dog in order to defend himself or his family from physical injury.[3] In re-

---

3. As Brown himself asserted in his post-trial mo-

tion to set aside the cruelty to animals conviction

buttal, the prosecution did not assert that Brown was subject to differing standards of self-defense as to the two different charges; instead, it essentially argued that even if Brown subjectively believed it necessary to kill in self-defense, his belief was unreasonable, since numerous reasonable alternatives were available to him. Finally, as will become clear in our discussion below of Brown's inconsistent verdict claim, we find no indication that the disparate jury verdicts reflect confusion over the scope of Brown's right to defend himself or his family from danger.

In short, assuming Brown was entitled to self-defense instructions as to his charges,[4] the instructions actually given below adequately informed the jury of the defense. In light of Brown's failure to make any specific request to revise or supplement the instruction dealing with the essential elements of the offense of cruelty to animals, we find no abuse of discretion in the trial court's failure to give Brown's proposed self-defense instructions as to that charge. *Stoneking v. State*, 800 P.2d 949, 950 (Alaska App.1990).

■ Brown separately contends that the trial court erred in failing to instruct the jury on the definition of what constitutes an "attack" by a dog. *See* AMC 17.05.010. Although Brown argues that the definition was essential to enable the jury to evaluate his claim of self-defense, he does not specify why. Neither of the charges against Brown made any direct use of or indirect reference to a dog "attack." Nor is it clear how the municipal definition would have been of material benefit to the jury in evaluating whether Brown reasonably believed it necessary to defend himself or his family under the specific circumstances of the present case. Finally, although Judge Finn declined to include the municipal definition of "attack" in the jury instructions, the judge expressly told Brown, "you can argue it if you want[.]" We

find no abuse of discretion. *Stoneking*, 800 P.2d at 950.

■ Brown lastly contends that Judge Finn erred in denying his motion to dismiss the cruelty to animals conviction on the ground that the jury's verdict convicting Brown of that offense was inconsistent with its verdict acquitting him of unlawfully discharging a firearm. Brown argues that, since the two charges were based on the same conduct and were subject to the same right of self-defense, his conviction for cruelty to animals cannot logically be reconciled with his acquittal of unlawfully discharging a firearm.

■ The law governing inconsistent jury verdicts is well settled. When a defendant is tried for two crimes and is convicted of one but acquitted of the other, the conviction must be reversed if the jury's verdicts are logically inconsistent with each other. *DeSacia v. State*, 469 P.2d 369, 378 (Alaska 1970). However, unless verdicts are "irreconcilably in conflict," meaning "necessarily or strictly inconsistent," they must be upheld. *Davenport v. State*, 543 P.2d 1204, 1207 (Alaska 1975); *DeSacia*, 469 P.2d at 373, 378. Verdicts challenged for inconsistency must be evaluated in light of the instructions the jury received. *Hansen v. State*, 845 P.2d 449, 456–57 (Alaska App.1993).

Brown's verdicts are not logically inconsistent. Under the instructions given below, in order to convict on the charge of unlawfully discharging a firearm, the jury was required to find beyond a reasonable doubt that Brown could not reasonably have believed it necessary to fire his gun in defense of himself or his family. By contrast, to convict on the charge of cruelty to animals, the jury was required to find beyond a reasonable doubt that Brown could not reasonably have believed it necessary to kill the dog in defense of himself or his family. As Judge Finn correctly recognized in denying Brown's motion to dismiss the cruelty to animals charge,

---

based on inconsistent verdicts, "[i]t was clear that the court's intent was that the self-defense standard be the same on each charge."

**4.** As previously mentioned, *see* footnote 2 above, our decision in *Trout v. State* expressly reserved the questions of whether and to what extent

statutory exceptions to a crime should be deemed to shift the burden of proof from the state to the accused. Our disposition in this case makes it unnecessary to address this issue; we express no opinion on it.

there would have been nothing logically inconsistent in the jury concluding that although Brown could reasonably have believed it necessary to fire a warning shot or to fire a shot aimed at injuring the dog, he could not reasonably have believed it necessary to kill the animal. The logical consistency of this result seems particularly apparent given the extensive testimony presented at trial concerning Brown's expertise with firearms and his experience in dealing with dangerous animals—evidence strongly suggesting that Brown should have been well aware of his ability to protect himself and his family by means less drastic than a shot between the dog's eyes.

As Judge Finn also correctly recognized, the circumstances surrounding the return of Brown's verdicts seem to indicate that this was precisely what the jury decided. The relevant circumstances involve a note that the jury sent to the court inquiring about a discrepancy between jury instructions number 7 and number 8. A brief explanation is necessary to place the jury's inquiry in context.

As we have already mentioned in this decision, the language of the municipality's cruelty to animals ordinance carves out an exception that allows "killing *or injuring* an animal where necessary to protect a human being ... from death or bodily injury." AMC 17.10.060(B)(2) (emphasis added). This language, including the words "or injuring," was given verbatim to Brown's jury in instruction number 7, which simply set out relevant text from the cruelty to animals ordinance. The next jury instruction, number 8, described the essential elements of the offense of cruelty to animals. As we have also previously pointed out, this instruction incorporated subsection (B)(2)'s necessity exception as the fourth element of the offense, informing the jury that, to establish Brown's guilt, the prosecution bore the burden of disproving the exception: "Fourth, that killing an animal was not necessary to protect a human being from death or bodily injury." As can be seen, this instruction restated more or less verbatim the language of subsection (B)(2). But because Brown had been charged with killing, not injuring, a dog, the

instruction's reference to "killing an animal" omitted the words "or injuring" from subsection (B)(2)'s reference to "killing *or injuring* an animal." The words omitted from instruction number 8 had been included in instruction number 7.

During the course of its deliberations, Brown's jury noticed the difference between instructions 7 and 8, and the jury sent a note to the court seeking clarification. The note asked if the word "injuring" had been deliberately omitted from the elements of the offense instruction. In response, with Brown's approval, the court advised the jury that "injury is not an issue in this case," and that "you can delete 'or injuring' from your consideration of MOA Code of Ordinance Sec. 17.10.060[ ], as it was included in that instruction in error."

The trial court's clarifying instruction in effect informed the jury that, as to the cruelty to animals charge, the claim of self-defense in Brown's case centered on the question of whether Brown reasonably believed that he needed to kill, not injure, the dog. Within ten minutes of receiving this clarification, the jury returned its verdicts, convicting Brown of cruelty to animals but acquitting him of unlawfully discharging a firearm.

We agree with Judge Finn that the jury's focus on the omission of the word "injury" from instruction number 8, and its return of a verdict within minutes of being assured that this omission was intended and appropriate, strongly suggest that the decision to convict Brown of cruelty to animals while acquitting him of unlawfully discharging a firearm rested on rational ground: the jury's conclusion that firing a shot to frighten or injure the dog might have been reasonable but that shooting to kill plainly was not. Under these circumstances, Judge Finn did not err in declining the find Brown's verdicts inconsistent.

Having found no error, we AFFIRM Brown's conviction.

COATS, J., not participating.