Ty S. DOUGLAS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8799.

Court of Appeals of Alaska.

Sept. 4, 2009.

Paul E. Malin, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant.

Eric A. Ringsmuth, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

*OPINION*

MANNHEIMER, Judge.

Ty S. Douglas was convicted of two counts of first-degree sexual assault and two counts of fourth-degree assault for separate attacks that he committed upon his girlfriend, K.I., on June 26 and 27, 2002. A detailed description of these crimes is contained in *Douglas v. State*, 151 P.3d 495, 497–98 (Alaska App. 2006), the opinion in which we affirmed Douglas's convictions on appeal.

Although we affirmed Douglas's convictions in our earlier decision, we remanded Douglas's case to the superior court for further sentencing proceedings because, at sentencing, the superior court violated Douglas's Sixth Amendment rights as construed in *Blakely v. Washington*[1] by relying on aggravating factors that were not tried to a jury. *Douglas*, 151 P.3d at 506–07.

(The decision in *Blakely* governs Douglas's case because Douglas's direct appeal of his convictions was pending when *Blakely* was decided.)

When Douglas's case returned to the superior court, the court held a jury trial on the State's proposed aggravating factors. With regard to the assault that was committed on June 26, 2002, the jury found no aggravators. However, with regard to the assault that was committed on June 27, 2002, the jury found three aggravators under AS 12.55.155:(c)(1)—that Douglas inflicted physical injury on K.I. during the sexual assault; (c)(2)—that Douglas acted with deliberate cruelty toward K.I. during the assault; and (c)(5)—that Douglas knew or should have known that K.I. was a particularly vulnerable victim.

Because no aggravating factors applied to the June 26th sexual assault, the superior court sentenced Douglas to the unadjusted presumptive term of 8 years' imprisonment. (The court also imposed a consecutive term of 1 year's imprisonment for the fourth-degree assault committed on June 26th.)

With regard to the June 27th sexual assault, based on the aggravating factors found by the jury, the superior court exceeded the 8–year presumptive term and sentenced Douglas to 30 years' imprisonment with 15 years suspended. For reasons that we explain in this opinion, the superior court declined to sentence Douglas for the fourth-degree assault committed on June 27th.

The superior court imposed the sentence for the June 27th sexual assault consecutively to the sentences for Douglas's June 26th crimes. Thus, Douglas's composite sentence

---

1. 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

was 24 years to serve and another 15 years suspended.

Douglas now appeals. In this appeal, Douglas contends that the superior court lacked the legal authority to hold a jury trial on the State's proposed aggravating factors. Douglas also contends that the jury was misinstructed concerning the scope of its decision-making authority, and that the evidence fails to support the jury's verdict on aggravator (c)(5) (*i.e.*, that K.I. was a particularly vulnerable victim). In addition, Douglas argues that when the superior court re-sentenced him (based on the jury's verdicts), the court violated the rule announced in *Juneby v. State*[2]—the rule that a sentencing judge should not rely on an aggravating factor when that factor is premised on conduct for which the defendant has been separately convicted and sentenced. Finally, Douglas argues that his composite sentence is excessive.

For the reasons explained here, we reject Douglas's contentions, and we therefore affirm the judgement of the superior court.

*Douglas's argument that the superior court had no legal authority to hold a jury trial to decide the State's proposed aggravating factors*

Alaska's original presumptive sentencing statutes (which were enacted in 1978, and which took effect on January 1, 1980),[3] did not comport with the United States Supreme Court's later decision in *Blakely v. Washington*. These statutes called for aggravating factors to be tried to the sentencing judge rather than to a jury, and the statutes specified that the burden of proof applicable to aggravating factors was "clear and convincing evidence" rather than proof beyond a reasonable doubt.

Both of these aspects of the presumptive sentencing laws violated the holding in

*Blakely*—the holding that, under the Sixth Amendment to the United States Constitution, criminal defendants have a right to demand a jury trial, and to demand proof beyond a reasonable doubt, on any factual issue that, if resolved against them, will increase the maximum punishment for their crime.[4]

In March 2005, the Alaska Legislature amended the presumptive sentencing statutes for the purpose of bringing them into conformity with *Blakely*.[5] Under the revised presumptive sentencing law, many aggravating factors must now be tried to a jury.[6] But Douglas's case is governed by the pre-March 2005 version of the law, which had no provision for jury trials of aggravating factors.

Douglas argues that, because his case is governed by the pre-March 2005 version of the law, and because that version of the law contained no provision for jury trials of aggravating factors, the superior court had no authority to convene a jury trial to decide the aggravating factors in his case—and it was improper for this Court to remand Douglas's case to the superior court for this purpose. Douglas contends that, under the circumstances of his case, the superior court was obliged to ignore the State's proposed aggravating factors, and to sentence Douglas to the unadjusted 8–year presumptive term on each of the two first-degree sexual assault convictions.

To support these contentions, Douglas relies on the state law of Washington. The Washington Supreme Court has held that, because Washington's pre-*Blakely* sentencing laws made no provision for jury trials of aggravating factors, the Washington courts have no authority to cure *Blakely* errors by convening juries to reconsider the aggravating factors that were earlier decided (improperly) by sentencing judges.[7]

---

**2.** 641 P.2d 823, 842–43 (Alaska App.1982), *modified on rehearing* 665 P.2d 30 (Alaska App.1983).

**3.** SLA 1978, ch. 166, § 12 (the presumptive sentencing statutes themselves) and § 25 (declaring that the new criminal code and sentencing statutes would govern offenses committed on or after January 1, 1980).

**4.** *Blakely*, 542 U.S. at 303–04, 124 S.Ct. at 2537.

**5.** *See* SLA 2005, ch. 2. Pursuant to § 33 of that session law, the revised presumptive sentencing statutes took effect on March 23, 2005.

**6.** *See* AS 12.55.155(f)(2).

**7.** *See State v. Womac*, 160 Wash.2d 643, 160 P.3d 40, 50 (2007); *State v. Pillatos*, 159 Wash.2d 459, 150 P.3d 1130, 1134–35 (2007); *State v. Hughes*, 154 Wash.2d 118, 110 P.3d 192, 208 (2005).

■ But in *State v. Moreno,* 151 P.3d 480 (Alaska App.2006), this Court considered this same issue, and we reached a different conclusion.

In *Moreno,* we acknowledged that Alaska's pre-March 2005 presumptive sentencing laws violated *Blakely* because they did not provide for jury trials of aggravating factors, and because they specified that aggravating factors could be established by clear and convincing evidence (rather than requiring proof beyond a reasonable doubt).[8] The problem presented in *Moreno* was that, based on the fact that the presumptive sentencing statutes violated *Blakely,* the superior court concluded that the presumptive sentencing laws as a whole were unconstitutional.

The superior court concluded that the statutory procedures for adjudicating aggravating factors (procedures that were invalid under *Blakely* ) "were so crucial to the overall functioning of presumptive sentencing that they could not be severed or amended by judicial decision", and thus the entire presumptive sentencing structure had to be struck down. *Moreno,* 151 P.3d at 481. We disagreed, and we held that the constitutionally flawed procedures specified in the pre-March 2005 statutes could be replaced by jury trial procedures conforming to the requirements of *Blakely. Id.*

Moreno, like Douglas, argued that it was beyond the proper scope of judicial authority for a court to amend the statutory procedures for litigating aggravating factors. *Id.* at 482. But based on the Alaska Supreme Court's decision in *R.L.R. v. State,*[9] we concluded that it *was* within our judicial authority "to alter [the] litigation procedures [pertaining to aggravating factors] to ensure that they conform to constitutional guarantees[, and] to order that defendants receive a jury trial on proposed aggravating factors that are not *Blakely*-compliant." *Moreno,* 151 P.3d at 482. Accordingly, we upheld the pre–2005 version of the presumptive sentencing law—"with the proviso that defendants must receive a jury trial on aggravating factors if mandated by *Blakely." Id.* at 483.

Based on our holding in *Moreno,* and for the reasons articulated in that decision, we reject Douglas's argument that the superior court had no authority to convene a jury to decide the aggravating factors in Douglas's case. It was both proper and necessary for the superior court to hold a jury trial on those aggravating factors.

*Douglas's argument that the superior court committed error by giving an instruction to the jury which (according to Douglas) told the jurors that they had no authority to re-evaluate whether Douglas was guilty of the underlying sexual assaults*

During an early stage of the proceedings on remand (*i.e.,* when the parties began their renewed litigation of the aggravating factors), Douglas contended that he should be allowed to argue to the sentencing jury that he was not guilty of the two underlying sexual assaults, even though the first jury had found him guilty of these offenses.

(Douglas did not contend that the second jury should be allowed to re-evaluate his guilt of the sexual assaults in the sense of re-evaluating whether he should be *convicted* of those offenses. Rather, Douglas argued that the second jury should be allowed to reject the State's proposed aggravating factors if the jurors believed that Douglas was not guilty of the underlying sexual assaults.)

Superior Court Judge Larry R. Weeks, the judge who presided over the renewed sentencing proceedings, agreed with Douglas: the judge ruled that, despite Douglas's conviction of the sexual assaults (and this Court's affirmance of those convictions on appeal), Douglas remained free to argue to the second jury "[that] he didn't do it".

Judge Weeks adhered to this position when, during the jury's deliberations, the jury sent a note asking:

Do we have to assume [that] the rape happened because of [Douglas's] previous conviction? If we doubt [that] there was a sexual assault, does that negate all of the new charges? Are we allowed to have that doubt?

**8.** *Moreno,* 151 P.3d at 481.

**9.** 487 P.2d 27, 32–33 (Alaska 1971).

In response to this note, Judge Weeks instructed the jury: "You must find that any aggravating factors occurred during the course of a sexual assault[, and therefore,] if you have reasonable doubts about whether a sexual assault occurred[,] you may not find that aggravating factors apply."

But the following day, the jury sent a second question on this issue. This time, the jury's note asked: "[M]ust this jury agree whether a sexual assault occurred beyond a reasonable doubt?"

Douglas argued that the correct answer to this question was "yes"; in other words, Douglas argued that the jury had to be convinced beyond a reasonable doubt that he was guilty of the underlying sexual assaults. The State argued that the answer was "no"— that the sentencing jury was not authorized to set aside the findings of guilt made by the first jury and affirmed on appeal.

Judge Weeks gave the following response to the jury's question:

> The defendant was convicted by an earlier jury [which found] beyond a reasonable doubt that he had penetrated the victim without her consent. In order for you to find aggravating factors[,] you must find that [the proposed aggravators] were committed during the commission of sexual assault in the first degree.

The jury sent no further communications to the court concerning this issue. As we noted earlier, the jury found no aggravators with respect to the June 26th sexual assault, but they found three of the State's five proposed aggravators with respect to the June 27th sexual assault.

■ On appeal, Douglas argues that Judge Weeks's final instruction to the jury was erroneous because (according to Douglas) it *directed* the jurors to acquiesce in the earlier jury's determination that Douglas was guilty of the two underlying sexual assaults.

Douglas points to the clause of the instruction which reads, "you must find that [the proposed aggravators] were committed during the commission of sexual assault in the

first degree". In his brief, Douglas italicizes the word "must", and he argues that the jurors would have taken this word as a command to set aside whatever doubts they had on this issue, and to acquiesce in the trial jury's earlier verdicts. In other words, Douglas construes this instruction to mean that, when the jurors deliberated on the aggravators, they were obliged to follow the earlier jury's verdicts and to presume that Douglas was committing sexual assault at the time of the alleged aggravating conduct.

We reject Douglas's suggested interpretation of Judge Weeks's instruction because it rests on taking one phrase of the instruction—"you must find"—out of context. Contrary to Douglas's position, this phrase was not a command to the jurors that they were required to presume that Douglas was engaged in sexual assault at the time of the aggravating conduct. Rather, it was a reminder to the jurors that they could not lawfully return a verdict in the State's favor on these aggravating factors unless they found that Douglas was engaged in sexual assault at the time of the aggravating conduct.

It is true that Judge Weeks's instruction reminded the jurors that Douglas's trial jury had found him guilty of the two sexual assaults beyond a reasonable doubt. But the jurors had already been informed of this. The real question is whether this second instruction negated or contradicted Judge Weeks's earlier instruction to the jurors on this issue—the instruction which told the jurors that they were free to re-evaluate the trial jury's conclusion, and that "if [they had] reasonable doubts about whether a sexual assault occurred[, they could] not find ... aggravating factors".

Contrary to Douglas's proposed reading of the second instruction, we do not believe that this second instruction can reasonably be interpreted to negate or contradict what Judge Weeks told the jurors earlier. Thus, viewing the instructions on this issue as a whole (which we are obliged to do),[10] we conclude that Judge Weeks's instructions al-

---

**10.** *See Edwards v. State*, 158 P.3d 847, 857 (Alaska App.2007); *Brown v. Anchorage*, 915 P.2d 654, 660 (Alaska App.1996).

lowed the jurors to re-evaluate the decision earlier reached by Douglas's trial jury.

This is not to say that we necessarily agree with Judge Weeks's resolution of this issue. That is, we do not necessarily agree that Douglas's sentencing jury was entitled to re-evaluate whether Douglas was factually guilty of the two underlying sexual assaults.

The earlier jury found, beyond a reasonable doubt, that Douglas had committed the two sexual assaults, and we affirmed those verdicts on appeal. When we remanded Douglas's case to the superior court, it was purely to cure the *Blakely* error.

The Alaska Supreme Court recently decided an analogous issue in *L.D.G., Inc. v. Brown*, 211 P.3d 1110 (July 10, 2009). *L.D.G.* arose from a lawsuit brought by the estate of a woman who had been shot and killed. The estate alleged that a bar operated by L.D.G., Inc. should be held liable for damages stemming from the woman's death, under the theory that the bar allowed the woman's assailant to consume alcoholic beverages in the bar just before the shooting, even though he was visibly intoxicated.[11]

When this lawsuit was first tried, the jury found that the bar was criminally negligent in allowing the woman's assailant to consume alcoholic beverages, and the jury also concluded that the woman's assailant would not have shot her but for his intoxication. Nevertheless, and paradoxically, the jury concluded that the bar's negligent action was not a contributing factor in the woman's death; the jury returned a verdict in favor of the bar on the issue of liability.[12] (Because of this verdict, the jury did not reach the issue of damages.)

The woman's estate immediately filed a motion asking the superior court to set aside the verdict, to enter judgement (on the issue of liability) in favor of the estate, and to set a new trial on the issue of damages. The superior court granted this motion: the superior court concluded that, given the jury's findings that the bar was negligent when it served the woman's assailant, and that the

shooting would not have occurred but for the assailant's intoxication, then (as a legal matter) the bar's negligent action had to be a contributing factor in the woman's death.[13]

At the beginning of the new trial on damages, the superior court ruled—over the bar's objection—that the new trial would be limited to the question of damages, that the issue of liability was irrelevant (because that issue had already been decided), and that the bar therefore would not be allowed to introduce evidence at the new trial regarding the circumstances surrounding the woman's death.[14]

On appeal, the bar challenged the superior court's ruling, but the supreme court upheld the superior court's decision to limit the litigation to the issue of damages, and to exclude the bar's proposed evidence regarding the circumstances surrounding the woman's death:

> [The bar] appears to have sought introduction of the evidence in order to relitigate questions of causation, including the degree to which the actions of [the bar's employee] ... contributed to [the woman's] death. Because the jury and the trial [judge] had already determined [the] legal cause [of the woman's death] and established [the bar's] liability [for that death] in the original trial, ... the superior court did not err in excluding evidence pertaining to the circumstances of [the woman's] death from the trial on damages.

*L.D.G.*, 211 P.3d at 1123.

Given the supreme court's ruling in *L.D.G.*, it appears that Douglas may not have been entitled to ask the second jury to re-evaluate whether he was factually guilty of the two sexual assaults. However, we are not required to resolve this issue. Regardless of whether Douglas was entitled to ask the second jury to re-assess his factual guilt of the sexual assaults, Judge Weeks in fact allowed Douglas to make this argument to the jury, and the jury instructions authorized the jurors to refuse to find aggravating fac-

---

**11.** *L.D.G.,* 211 P.3d at 1116.

**12.** *Id.*

**13.** *Id.* at 1116–17.

**14.** *Id.* at 1117, 1121.

tors if they believed that Douglas was not factually guilty of the underlying sexual assaults. Thus, any error ran in Douglas's favor.

*The relationship between the jury's verdict on aggravating factor (c)(1)—the jury's finding that Douglas inflicted physical injury on K.I. during the June 27th sexual assault—and Douglas's conviction for fourth-degree assault on K.I. based on that same June 27th incident*

Under AS 12.55.155(c)(1), a felony offense is aggravated for presumptive sentencing purposes if "a person, other than an accomplice, sustained physical injury as a direct result of the defendant's conduct". In the *Blakely* jury trial that was held following our remand of Douglas's case, the jury concluded that the State had proved this aggravator with respect to the June 27th sexual assault.

(Under AS 12.55.155(e), a sentencing court is prohibited from relying on an aggravating factor that is based on a necessary element of the defendant's underlying felony. But in *Woods v. State*, 667 P.2d 184, 187–88 (Alaska 1983), the supreme court held that the infliction of physical injury is not a necessary element of the crime of first-degree sexual assault, and thus a sentencing court can properly rely on aggravator (c)(1) when sentencing a defendant for that crime.)

In addition to this sexual assault, Douglas was convicted of the misdemeanor offense of fourth-degree assault, AS 11.41.230(a)(1), stemming from the same June 27th attack on K.I. This subsection of the fourth-degree assault statute defines the offense as "recklessly caus[ing] physical injury to another person".

Given the facts of Douglas's case (in particular, the fact that the sexual assault and the fourth-degree assault were simply different components of the same attack, and the fact that Douglas was the sole assailant and K.I. the sole victim), essentially the same conduct formed the basis for both aggravator (c)(1) and the fourth-degree assault conviction. (The primary difference is that, for the

fourth-degree assault conviction, the State had to prove that Douglas acted "recklessly" with respect to the possibility that his conduct would cause physical injury.)

In *Juneby v. State*, 641 P.2d 823, 842–43 (Alaska App.1982), *modified on rehearing*, 665 P.3d 30, 38 (Alaska App.1983), this Court held that a sentencing court should not rely on an aggravating factor to increase a presumptive term of imprisonment if that aggravating factor is based on conduct for which the defendant is being separately punished. In our earlier decision in Douglas's case, we noted that it would apparently violate the rule announced in *Juneby* if the superior court increased Douglas's sentence for the sexual assault based on aggravator (c)(1) and, at the same time, imposed a separate sentence for the fourth-degree assault. *Douglas*, 151 P.3d at 505. However, we did not have to resolve this issue, because we vacated the superior court's sentencing decision for other reasons. *Id.*

On remand, Judge Weeks submitted aggravator (c)(1) to the jury. This is the procedure called for in AS 12.55.155(f)(2)—although, under the facts of Douglas's case, an argument could be made that Judge Weeks might properly have found aggravator (c)(1) without submitting this aggravator to a jury, since the factual basis for this aggravator was seemingly encompassed by the original trial jury's guilty verdict on the fourth-degree assault charge. *See Cleveland v. State*, 143 P.3d 977, 982 (Alaska App.2006).

■ The jury found that the State had proved aggravator (c)(1) with respect to the June 27th sexual assault, and thus Judge Weeks was forced to confront the *Juneby* issue. It is true that, at Douglas's original sentencing, he received a concurrent 1–year sentence of imprisonment for the June 27th fourth-degree assault;[15] in other words, this fourth-degree assault sentence did not increase Douglas's composite sentence for his crimes. But this fact did not solve the *Juneby* problem—because the *Juneby* rule applies even when the separate punishment is a completely concurrent sentence.[16]

---

15. *Douglas*, 151 P.3d at 504.

16. *Ritter v. State*, 97 P.3d 73, 82 (Alaska App. 2004); *Juneby (on rehearing)*, 665 P.2d at 38.

Judge Weeks decided to resolve the *Juneby* problem by completely vacating Douglas's conviction for the June 27th fourth-degree assault, so that he could then rely on aggravator (c)(1) to enhance Douglas's sentence for the June 27th sexual assault. The State did not ask the judge to do this, but the State did not object to the judge's action.

■ On appeal, Douglas argues that Judge Weeks's action violated the constitutional doctrine of separation of powers. Douglas relies on the fact that the executive branch of government has sole discretion regarding charging decisions in criminal cases.[17] He points out that the State made the decision to file separate charges of sexual assault and fourth-degree assault based on the June 27th attack, and he argues that the superior court had no authority to alter the State's decision.

Given our supreme court's holding in *Woods v. State* that the infliction of physical injury is not a necessary element of the crime of first-degree sexual assault,[18] the State had an obvious interest in prosecuting Douglas for both first-degree sexual assault (based on the act of sexual penetration) and fourth-degree assault (based on the infliction of physical injury). But Judge Weeks did not attempt to impede the State's prosecution of these separate charges. Rather, the judicial action that Douglas challenges in this appeal took place *after* the State prosecuted these charges and obtained guilty verdicts on both of them.

In important respects, the *Juneby* problem confronting Judge Weeks was analogous to the problem that confronts sentencing judges under the *Whitton* rule—the Alaska rule that defines when separate offenses should be deemed the "same crime" for purposes of our state's double jeopardy clause.[19]

Under Alaska law, the State is allowed to pursue an indictment which separately charges different theories of the same crime, or which charges separate crimes that clearly will be treated as the "same crime" for sentencing purposes under *Whitton* if the defendant is convicted of each.[20] In other words, the State is allowed to litigate, and obtain jury verdicts on, separate crimes or separate theories of a crime even though it is known beforehand that, if the defendant is convicted of these various counts, the law will preclude the sentencing judge from imposing separate convictions on each verdict.

In these situations, when a sentencing judge follows *Whitton* and declines to enter a separate conviction on each jury verdict, the judge's action does not infringe the executive branch's prosecutorial discretion. The judge has not prevented the State from choosing the appropriate charges, or from litigating those charges and obtaining jury verdicts on them. Rather, the sentencing judge's authority under the double jeopardy clause comes into operation *after* the jury returns its verdicts, when the judge is asked to enter judgement on those verdicts. At that time, the judge is authorized to merge one or more of the verdicts so that the defendant receives only the number of convictions and sentences allowed by the double jeopardy clause.

Often, when a sentencing judge complies with *Whitton* and enters a single judgement based on two or more verdicts, there will be no dispute as to the offense for which judgement should be entered—either because the various verdicts simply represent different theories of the same offense, or because one of the verdicts is for an offense that is clearly of a more serious category than the others. But in situations where it is not clear which offense the defendant should stand convicted of, Alaska case law suggests that the State should be able to choose the offense for which the court enters judgement and sentences the defendant.[21]

---

**17.** *See State v. District Court*, 53 P.3d 629, 631 (Alaska App.2002) ("Both the Alaska Supreme Court and this Court have declared that charging decisions are committed to the discretion of the executive branch; so long as these decisions are exercised within constitutional bounds, they are not subject to judicial control or review.").

**18.** 667 P.2d at 187–88.

**19.** *Whitton v. State*, 479 P.2d 302, 312–13 (Alaska 1970).

**20.** *Garhart v. State*, 147 P.3d 746, 752–53 (Alaska App.2006).

**21.** See *Dunn v. Alaska*, 653 P.2d 1071, 1089 (Alaska App.1982), where this Court stated: "On appeal, the state has confessed error [on the

On this point, it is possible that the *Juneby* rule should operate differently from the *Whitton* rule. In *Juneby* situations, the problem lies in the overlap between one offense and an aggravating factor that applies to another offense. Because of this, *both* the prosecuting agency and the sentencing court arguably have authority to choose the outcome.

As Douglas notes in his brief, the State decided to charge him with fourth-degree assault in addition to first-degree sexual assault. Because the executive branch has the authority to choose which charges to file and litigate, one can argue that the State should be able to insist that judgement be entered on the fourth-degree assault charge, in accordance with the trial jury's verdict—even though this means that the sentencing judge will be forbidden from relying on aggravating factor (c)(1) when the judge sentences Douglas for the first-degree sexual assault.

■ But under Alaska law, a sentencing court has an independent obligation to make sure that all applicable aggravating and mitigating factors are considered at a felony sentencing, regardless of the wishes of the parties. In *Hartley v. State*, 653 P.2d 1052, 1056 (Alaska App.1982), and again in *Love v. State*, 799 P.2d 1343, 1346 (Alaska App.1990), this Court held that, despite the willingness of the parties to ignore the existence of applicable aggravating and mitigating factors, a sentencing court must independently evaluate the aggravators and mitigators revealed by the evidence. Conceivably, in *Juneby* situations, this doctrine might give a sentencing judge overriding authority to decline to enter judgement on another, overlapping offense if the judge concludes that it is necessary to consider the corresponding aggravating factor in order to achieve a fair felony sentence.

We need not resolve this issue in Douglas's case—because, when Judge Weeks announced that he intended to vacate the judgement on the fourth-degree assault charge so that he could consider aggravating factor (c)(1) when he sentenced Douglas for the first-degree sexual assault charge, the prosecutor did not object, and the State has not cross-appealed the judge's decision.

Based on the State's inaction, we conclude that the State acquiesced in Judge Weeks's resolution of the *Juneby* issue. For this reason, we need not decide whether, in *Juneby* cases where the State insists on a judgement for the separate offense and announces a willingness to relinquish any reliance on the corresponding aggravating factor, a judge would violate the doctrine of separation of powers if the judge followed the same course as Judge Weeks did in this case.

■ In his reply brief, Douglas asserts for the first time that Judge Weeks violated the double jeopardy clause when he vacated the previously entered judgement for the June 27th fourth-degree assault. (We say "for the first time" even though we acknowledge that Douglas referred to "double jeopardy" in the section heading of his opening brief that introduces Douglas's discussion of the *Juneby* problem. Even though the section heading mentions "double jeopardy", the text that follows this section heading contains no argument based on the double jeopardy clause; instead, Douglas relies entirely on the doctrine of separation of powers and this Court's decision in *Juneby*.)

Douglas also asserts for the first time in his reply brief that there was an overlap (for *Juneby* purposes) between the fourth-degree assault charge and aggravating factor (c)(2)—the "deliberate cruelty" aggravator.

Because both of these contentions are raised for the first time in Douglas's reply brief, they are waived, and we do not address them further.[22]

---

*Whitton* ] issue and has requested that the judgment ... entered [on] the lesser offense of theft be vacated[.] ... Remand of this case to permit the superior court to vacate the judgment entered for the offense of theft ... appears to be the appropriate remedy. *See Tuckfield v. State*, 621 P.2d 1350, 1352–53 (Alaska 1981); *Robinson v. State*, 484 P.2d 686 (Alaska 1971). Accordingly, the case will be remanded for this purpose."

22. *See Petersen v. Mutual Life Ins. Co. of New York*, 803 P.2d 406, 411 (Alaska 1990); *Hitt v. J.B. Coghill, Inc.*, 641 P.2d 211, 213 n. 4 (Alaska 1982); *Charliaga v. State*, 157 P.3d 1053, 1055–56 (Alaska App.2007).

*Douglas's argument that there was insufficient evidence to sustain the jury's verdict on aggravating factor (c)(5) (particularly vulnerable victim)—or, in the alternative, that it was improper for Judge Weeks to rely on this aggravator*

Under the pre–2008 version of AS 12.55.155(c)(5), the version that applies to Douglas's case, a felony offense is aggravated for presumptive sentencing purposes if the defendant knew or should have known that the victim of the offense was "particularly vulnerable or incapable of resistance due to advanced age, disability, ill health, or extreme youth[,] or was for any other reason substantially incapable of exercising normal physical or mental powers of resistance."[23]

■ In Douglas's case, the jury found aggravator (c)(5) with respect to the June 27th sexual assault under the theory that Douglas's victim, K.I., "was substantially incapacitated by ... emotional, psychiatric[,] or psychological condition[s]" when Douglas sexually assaulted her.

On appeal, Douglas argues that the State failed to present evidence of any specific emotional, psychiatric, or psychological condition that rendered K.I. particularly vulnerable.

Although the State may not have pointed to a specific psychiatric diagnosis or defined mental condition, the record contains evidence that Douglas repeatedly engaged in manipulative, controlling, and violent behavior toward K.I. during their relationship. He subjected her to frequent beatings and sexual assaults. Following one episode of physical abuse (in March 2002), K.I. obtained a domestic violence protective order against Douglas, but Douglas prevailed on her to dissolve this protective order.

Their relationship continued to be volatile, and, at one point, K.I. even moved out of her own house and went to stay in a hotel for a while to get away from Douglas, after Douglas refused to leave the house. After the sexual assaults in the present case (June 2002), Douglas continued to contact K.I. from jail, and he asked K.I. to recant her allegations of sexual assault—which she did.

Based on the tenor of Douglas's and K.I.'s long-term relationship, a jury might be justified in concluding that Douglas exerted control over K.I. to such an extent that she suffered emotional or psychological vulnerability.

This Court addressed an analogous situation in *Williams v. State,* 859 P.2d 720 (Alaska App.1993). Like Douglas's appeal, the *Williams* case involved a challenge to the State's evidentiary basis for aggravator (c)(5). The defendant in *Williams* committed sexual assault on his nineteen-year-old stepdaughter, but this assault was not an isolated incident. Williams began sexually assaulting his stepdaughter when she was six or seven years old, and he continued to assault her on a regular basis, both physically and sexually, for the next twelve years, until he was finally charged.[24]

In his appeal, Williams argued that his stepdaughter should not be considered particularly vulnerable because, by the time of the charged sexual assault, she was nineteen years old.[25] This Court ruled, however, that a reasonable fact-finder could properly find aggravator (c)(5)—*i.e.,* could find that Williams's stepdaughter was particularly vulnerable—based on the long-term abuse she had suffered at Williams's hands. We declared that "Williams' background of abuse toward his victim [bore] an intrinsic relationship to his assault and to his victim's response to that assault." *Id.,* 859 P.2d at 722.

Our decision in *Williams* supports the conclusion that Douglas's long-term physical and sexual abuse of K.I. could properly form the evidentiary basis for the jury's verdict on aggravator (c)(5). We therefore hold that a jury could reasonably find aggravator (c)(5) in Douglas's case.

■ Douglas points out that, although the jury found aggravator (c)(5) with respect to

---

**23.** The legislature amended aggravator (c)(5) in 2008 by adding "homelessness" to the list of circumstances that may render a victim particularly vulnerable. *See* SLA 2008, ch. 58, § 1.

**24.** *Williams,* 859 P.2d at 721–22.

**25.** *Id.* at 722.

the second sexual assault (the one committed on June 27th), the jury did not find this aggravator with respect to the first sexual assault (the one committed on June 26th). Based on this discrepancy in the jury's verdicts, Douglas argues that the jury must have concluded that the June 26th sexual assault was, itself, a primary factor in rendering K.I. particularly vulnerable on June 27th. And based on this premise, Douglas then argues that Judge Weeks violated the *Juneby* rule when he relied on aggravator (c)(5) in sentencing Douglas—since Douglas was being separately punished for the June 26th sexual assault.

Even if Douglas's premise were correct—that is, even if the jury believed that the June 26th sexual assault was a primary reason why K.I. was a particularly vulnerable victim on June 27th—there would be no violation of *Juneby* if Judge Weeks took this aggravator into account when he sentenced Douglas for the June 27th sexual assault.

Even under Douglas's view of the evidence and the jury's verdicts, aggravator (c)(5) was not proved by the *fact* that Douglas sexually assaulted K.I. on June 26th. Rather, aggravator (c)(5) was based on the *result* of that June 26th sexual assault—the fact that K.I. was in a heightened state of psychological or emotional vulnerability on June 27th (the date of the second sexual assault).

The physical or emotional aftermath of a sexual assault is not an element of the offense itself. Compare *Woods v. State*, 667 P.2d at 187–88, where our supreme court held that the infliction of physical injury is not a necessary element of the crime of first-degree sexual assault. Thus, Douglas's premise—that K.I.'s heightened vulnerability stemmed from the fact that Douglas had sexually assaulted her the day before—does not lead to the conclusion that he suffered double punishment for that earlier sexual assault when Judge Weeks relied on aggravator (c)(5).

Under *Juneby*, the fact that a defendant has already been punished for an *earlier* crime does not bar a sentencing judge from considering aggravating factors that flow

from the defendant's commission of the earlier crime. Thus, for example, *Juneby* does not bar a sentencing judge from considering aggravator (c)(7) (prior conviction for a felony of a more serious class than the present offense), or aggravator (c)(8) (prior commission of aggravated assault or repeated acts of assault), or aggravator (c)(15) (three or more prior felony convictions).

Similarly, there are times when a defendant's commission of an earlier crime will result in a persisting physical or emotional injury that leaves the victim in a heightened state of vulnerability. If, on a later occasion, the defendant takes advantage of that heightened vulnerability to commit another crime upon the same victim, a sentencing judge's consideration of this fact—*i.e.*, the judge's consideration of aggravator (c)(5)—does not violate the *Juneby* rule, even though the defendant has been, or is being, punished for that earlier crime as well.

We therefore hold that, even if the jury's verdicts are construed as Douglas suggests (that is, even if we assume that K.I.'s heightened psychological or emotional vulnerability on June 27th was the result of Douglas's previous sexual assault on her the day before), Judge Weeks did not violate the *Juneby* rule when he considered aggravator (c)(5) when formulating Douglas's sentence for the June 27th sexual assault.

*Whether Douglas's composite sentence is excessive*

■ Douglas was sentenced for three offenses: the first-degree sexual assault committed on June 26th, the fourth-degree assault committed that same day, and the first-degree sexual assault committed on June 27th.

At the time of Douglas's offenses (June 2002), the maximum sentence for first-degree sexual assault was 30 years' imprisonment and, as a first felony offender, Douglas faced a presumptive term of 8 years' imprisonment on each of the two counts.[26] Fourth-degree

---

**26.** *See* AS 12.55.125(i)(1) (2002).

assault is a class A misdemeanor, with a maximum penalty of 1 year's imprisonment.[27]

Because the jury found no aggravators with respect to the June 26th sexual assault, and because there were no mitigators, Judge Weeks was obliged to sentence Douglas to the 8–year presumptive term of imprisonment for this offense. However, because the jury found aggravators with respect to the June 27th sexual assault, Judge Weeks was empowered to impose any term of imprisonment up to the 30–year maximum sentence for this offense.[28]

As we have already noted, Judge Weeks found Douglas to be a "worst offender" for sentencing purposes. This finding authorized Judge Weeks to impose a composite sentence of imprisonment of up to 30 years to serve—the maximum sentence for Douglas's single most serious offense (*i.e.*, the aggravated sexual assault committed on June 27th).[29]

Nevertheless, Judge Weeks did not exercise the full extent of this authority. Instead, he sentenced Douglas to a composite 24 years to serve: 8 years to serve for the June 26th sexual assault, a consecutive 1 year to serve for the fourth-degree assault committed that same day, and a consecutive sentence of 30 years with 15 years suspended (*i.e.*, 15 years to serve) for the June 27th sexual assault.

On appeal, Douglas argues that this 24–year composite sentence is excessive. But when Judge Weeks originally sentenced Douglas in 2004, the judge imposed a more severe composite sentence—30 years to serve—and, in Douglas's first appeal, we upheld this sentence, concluding that it was not clearly mistaken. *Douglas v. State*, 151 P.3d at 505. Seemingly, then, it follows that Douglas's new, lesser sentence is not clearly mistaken.

Douglas argues that Judge Weeks did not sufficiently consider the testimony of Dr.

Fred Wise, a neuropsychologist who testified at Douglas's second sentencing hearing and who suggested that Douglas's criminal behavior was attributable to a combination of alcoholism and treatable psychiatric conditions. But in his sentencing remarks, Judge Weeks specifically referred to Dr. Wise's testimony and recommendations. Judge Weeks did not disregard the psychologist's testimony. Rather, the judge weighed that testimony, and Douglas's potential for rehabilitation, against the other sentencing criteria. In particular, Judge Weeks weighed the potential for Douglas's rehabilitation against the danger that Douglas would pose until he was successfully treated.

Having reviewed the record of Douglas's 2007 sentencing, and having reviewed again the record of Douglas's original sentencing in 2004, we conclude that Judge Weeks was not clearly mistaken when he sentenced Douglas to a composite term of 24 years to serve. Accordingly, we uphold this sentence.[30]

*Conclusion*

For the reasons explained here, the judgement of the superior court is AFFIRMED.

---

27. *See* AS 11.41.230(b) (declaring that fourth-degree assault is a class A misdemeanor) and AS 12.55.135(a) (providing a maximum penalty of 1 year's imprisonment for class A misdemeanors).

28. *See* AS 12.55.155(a)(2) (2002).

29. *See State v. Wortham*, 537 P.2d 1117, 1120–21 (Alaska 1975).

30. *See McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974) (an appellate court is to affirm a sentencing decision unless the decision is clearly mistaken).